**UNITED STATES, Appellee,**

v.

**Matthew M. CLARK, Specialist,
U.S. Army, Appellant.**

No. 97–0569.
Crim.App. No. 9501018.

U.S. Court of Appeals for
the Armed Forces.

Argued May 12, 1998.

Decided Sept. 23, 1998.

For Appellant: *Captain Thomas Jay Barrett* (argued); *Colonel John T. Phelps, II, Lieutenant Colonel Michael L. Walters,* and *Major Leslie A. Nepper* (on brief).

For Appellee: *Captain Arthur J. Coulter* (argued); *Colonel Joseph E. Ross, Lieutenant Colonel Frederic L. Borch, III,* and *Captain Chris A. Wendelbo* (on brief); *Captain Thomas N. Auble.*

*Opinion of the Court.*

EFFRON, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of drunken and reckless operation of a vehicle and negligent homicide,[1] in violation of Articles 111 and 134, Uniform Code of Military Justice, 10 USC §§ 911 and 934, respectively. Appellant was sentenced to a dishonorable discharge, confinement for 3 years, and total forfeitures. The convening authority approved the sentence as adjudged. The Court of Criminal Appeals affirmed. 45 MJ 613 (1997).

1. Appellant was charged with involuntary manslaughter, in violation of Article 119, UCMJ, 10 USC § 919, but convicted of the lesser-included offense of negligent homicide.

On appellant's petition, we granted review of the following issues:

## I

WHETHER APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO INTRODUCE CLEARLY EXCULPATORY EVIDENCE FROM AN ACCIDENT RECONSTRUCTION EXPERT WHERE THE ACCIDENT RECONSTRUCTION WAS COMPLETED PRIOR TO TRIAL, THE EXPERT WAS PREPARED TO TESTIFY, THIS EVIDENCE WAS THE ONLY DIRECT EVIDENCE SUPPORTING THE DEFENSE THEORY, AND APPELLANT FULLY EXPECTED THE EXPERT TO TESTIFY.

## II

WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED AS A MATTER OF LAW BY FAILING TO ORDER AFFIDAVITS AS REQUESTED BY THE DEFENSE AFTER THE DEFENSE MADE A *PRIMA FACIE* CASE THAT THE TRIAL DEFENSE COUNSEL WERE INEFFECTIVE, RULING INSTEAD THAT AN APPELLANT MUST EFFECTIVELY PERFECT A CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL BEFORE THE COURT WILL EXERCISE ITS POWER TO FIND FACTS FOR INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS PURSUANT TO UCMJ, ART. 66, 10 USC § 866 (1988) AND *UNITED STATES V. LEWIS,* 42 MJ 1 (1995).

We hold that appellant has met his threshold burden under *Strickland v. Washington,* 466 U.S. 668, 687–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that the Court of Criminal Appeals erred when it dismissed appellant's claim of ineffective assistance of counsel without developing a sufficient record.

## FACTS

Appellant was convicted of drunk and reckless driving and negligent homicide, following an early morning car accident that resulted in the death of Specialist (SPC) McLean. SPC McLean was struck by appellant's car while he was participating in a group road march, and he died from his wounds shortly thereafter.

At trial, Staff Sergeant (SSG) Johnson testified that appellant had been driving fast and "swerving across the road" prior to the accident and that the car had swerved " 'completely off' the right side of road" before it struck SPC McLean. SSG Johnson also testified that the marchers were wearing chemical lights and were visible to oncoming traffic. One of the road marchers and the noncommissioned officer in charge of the march testified that SPC McLean was wearing the proper reflective attire. Sergeant (SGT) Hill, the military policeman who investigated this accident, opined that the collision occurred "off the road way, on the right shoulder." The Government also introduced evidence that appellant's blood-alcohol concentration at the time of the accident was .16 to .17, and an expert witness testified as to the relationship between this level of intoxication and impairment.

The defense's theory of the case was that appellant was neither impaired by alcohol at the time of the accident nor negligent in his operation of his vehicle. Specifically, the defense argued that: (1) appellant's actions were within the normal range of expected reactions; and (2) SPC McLean was walking on the roadway, on the wrong side of the road, when the accident occurred, and he was not visible to appellant because it was dark and he was wearing camouflage without proper reflective gear.

To provide a factual basis for their arguments, the defense retained an accident reconstruction expert, Mr. Edward Livesay, who prepared a report based on the data collected during the military police investigation. Mr. Livesay assumed that both appellant's car and SPC McLean's body traveled in straight lines following impact and concluded that SPC McLean was on the roadway when he was struck by appellant's car. In addition, Mr. Livesay opined that SPC McLean would not have been visible to appellant and that appellant's reaction time was

within the normal range of expected reaction times, which indicated that appellant was not impaired at the time of the accident. Defense counsel, however, did not call Mr. Livesay to testify at appellant's trial.

## ANALYSIS

█ To establish ineffective assistance of counsel, appellant must show both: (1) that his trial defense "counsel's performance was deficient," prior *i.e.,* that counsel's error in failing to call Mr. Livesay as a witness was "so serious that [they were] not functioning as the 'counsel' guaranteed [appellant] by the Sixth Amendment"; and (2) that "the deficient performance prejudiced the defense[,]" *i.e.,* that the error was "so serious as to deprive [appellant] of a fair trial, a trial whose result is reliable." *Strickland, supra* at 687, 104 S.Ct. 2052. Because counsel is presumed to have performed competently, *id.* at 689, 104 S.Ct. 2052, an appellant asserting an ineffective-assistance claim "must surmount a very high hurdle." *United States v. Moulton,* 47 MJ 227, 229 (1997), *cert. denied,* — U.S. —, 118 S.Ct. 1048, 140 L.Ed.2d 112 (1998).

█ Appellant argues that failure of his trial defense counsel to call Mr. Livesay to testify at trial rendered their performance ineffective. Appellant asserts that "Mr. Livesay's report contained a wealth of potentially exculpatory information," Final Brief at 7, and "provided the most credible, compelling evidence corroborating appellant's version of the car accident." According to appellant, Mr. Livesay's testimony "would have speared the heart of the Government's case" and made the defense case at the same time, Final Brief at 4, and "[n]o possible strategy decision could justify the failure to use this evidence." Final Brief at 7.

Appellant also asserts that, at a minimum, his evidence establishes a *"prima facie"* case of ineffective assistance of counsel and that the Court of Criminal Appeals could not resolve his claim against him without a sufficient evidentiary foundation. Under those circumstances, according to appellant, the Court of Criminal Appeals erred by dismissing his ineffective-assistance claim without requiring trial defense counsel to explain their decision.

The Government replies that: (1) the decision not to call Mr. Livesay was a tactical decision of counsel; and (2) even if the performance of trial defense counsel was deficient in this regard, appellant was not prejudiced because Mr. Livesay's conclusions were used by trial defense counsel in their cross-examination of the Government's witnesses.

Notwithstanding the high hurdle appellant must surmount to succeed ultimately on the merits of his claim, at this point we need only decide whether appellant has "met the threshold burden to demonstrate that his trial lawyer's performance was ineffective," *United States v. Ingham,* 42 MJ 218, 224 (1995), *cert. denied,* 516 U.S. 1063, 116 S.Ct. 745, 133 L.Ed.2d 693 (1996). In that context, we ask whether appellant's assertions, if left unrebutted, would meet the *Strickland* standard and appellant would be entitled to relief as a matter of law, such that the Government must respond to his allegations. *United States v. Lewis,* 42 MJ 1, 6 (1995).

We believe that appellant has made the required showing. He has submitted an affidavit from Mr. Livesay in which Mr. Livesay states that he "expected" and was prepared to testify at appellant's trial. As to the content of his testimony, Mr. Livesay states that he would have sworn "to the facts and opinions that are contained in [his] report," testifying about the preparation and content of his report and his conclusions about the causes of the accident. Appellant also has submitted his own affidavit in which he states that he "expected Mr. Livesay to testify" at trial and expected his report to be presented to the members.

The Government's case against appellant relied heavily on the testimony of SGT Hill, the military's accident reconstruction expert. Although SSG Johnson was driving behind appellant prior to the accident, neither she nor the road marcher who testified at appellant's trial actually witnessed the impact. Trial defense counsel contested the Government's version of the events and attempted to offer appellant's explanation of the acci-

dent, but they presented no affirmative evidence to support appellant's theory.

In these circumstances, which would have presented a classic battle of experts, the potential damage to the side whose expert is missing can be devastating. Although trial defense counsel may have had valid reasons for deciding not to call Mr. Livesay to testify, those reasons are not apparent from the record, and it is not the province of this Court to speculate as to what those reasons might have been.

The deficiencies that have led us to dismiss other ineffective-assistance claims are not present in this case. Having submitted the content of the witness's testimony and the witness's statement that he was prepared to testify, appellant has "demonstrat[ed] that [a] specific individual[ ] would have provided the court with specific testimony." *Moulton, supra* at 229. If the record is developed and shows that trial defense counsel did not have a reasonable explanation for not calling Mr. Livesay to testify, then appellant will have established deficient performance. Under the circumstances of this case, there is at least a reasonable likelihood that, upon further review, appellant will be able to show that such a deficiency was prejudicial to his defense at trial. Appellant's "allegation[s] and the record contain evidence which, if unrebutted, would overcome the presumption of competence." *Lewis, supra* at 6. Because appellant met his "threshold burden" to establish ineffective assistance, the Court of Criminal Appeals could not decide his claim without developing an appropriate record on the matter. *See Ingham,* 42 MJ at 224; *cf. United States v. Ginn,* 47 MJ 236, 248 (1997).

## DECISION

The decision of the United States Army Court of Criminal Appeals is set aside, and the record of trial is returned to the Judge Advocate General of the Army for remand to that court to develop the record as necessary to resolve appellant's claim of ineffective assistance of counsel, by ordering affidavits from appellant's trial defense counsel and, if necessary, by ordering a hearing under *United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967).

Judges SULLIVAN and GIERKE concur.

COX, Chief Judge (concurring):

This case illustrates once again how the lack of a procedural rule regarding collateral attacks on a verdict causes difficulty. *See United States v. Ginn,* 47 MJ 236 (1997); *United States v. Dykes,* 38 MJ 270, 274 (CMA 1993) (Cox, J., concurring in the result). I once again invite the Joint Services Committee to consider a rule for post-conviction attacks on courts-martial.

CRAWFORD, Judge (dissenting):

Appellant has not met his burden to show lack of competence by his civilian and military trial defense counsel. In essence, when defense counsel is faced with the knowledge that the foundation for the testimony of his or her expert witness is weak, and counsel can introduce the defense theory or theories through cross-examination of the government witnesses, thereby avoiding the dangers of cross-examination of the defense expert, it is a valid tactical decision for counsel not to call that defense expert.

Nothing the defense expert would have stated alters the basic fact that appellant operated his automobile negligently while under the influence of alcohol, and that his negligence resulted in the victim's death. Contributory negligence by the victim is not a defense to negligent homicide, unless it "looms so large" that the accused's negligence is no longer "a substantial factor" in the victim's death. *United States v. Taylor,* 44 MJ 254, 256–57 (1996). Here, any negligence that may have been committed by the victim did not "loom so large."

## FACTS

The accused was charged with driving a motor vehicle with a suspended license, driving while intoxicated, and involuntary manslaughter. He was acquitted of driving on a suspended license and the major felony of involuntary manslaughter, but found guilty of

the lesser-included offense of negligent homicide and driving while intoxicated.

During the early morning hours of March 17, 1995, appellant was driving his black 1985 Pontiac Fiero GT on Fort Bragg, N.C., on his way to his first morning formation. Appellant had been "out on the town" drinking with friends on the evening of March 16, had become intoxicated, and had only a·little more than 3 hours' sleep before leaving for duty on the morning of March 17th.

At the same time, Staff Sergeant (SSG) Tracy A. Johnson was also traveling to work on Fort Bragg. While driving at the posted speed limit of 45 miles per hour, SSG Johnson observed appellant's car pass her. After appellant's car passed her, SSG Johnson saw it "swerving" to the right and left as it sped ahead of her. Both vehicles stopped at the intersection of MacRidge Road and Longstreet Road, and both turned right onto Longstreet and passed a road guard who was holding a flashlight. Appellant saw "ruck marchers on the left hand side of the road" who had chemical lights on their helmets and were clearly visible. Shortly after turning onto Longstreet Road, appellant's car struck Private First Class (PFC) Roger McLean, who was participating in a unit road march. PFC McLean was walking in the direction of the traffic flow and was struck from behind. SSG Johnson testified she saw appellant's car swerve off the roadway and then saw McLean's body fly over his car.

After coming to a stop, appellant, a state-recognized emergency medical technician, exited his car and ran back to render assistance to the victim. However, the victim died shortly after the accident. Appellant was taken to the hospital, and a blood alcohol test (BAT), administered approximately 2 hours after the accident, showed a reading of 0.144. Appellant had a prior civilian court conviction in 1992 for driving while impaired.

Appellant admitted going to a Japanese restaurant the night before the accident, where he had sushi, soup, and a 22–ounce beer. He had consumed "a beer and a half" before going out to the restaurant. After leaving the restaurant, he went to a sports bar, where he remained for about 3 hours, continuing to drink. Besides beer, appellant consumed "three shots" of a drink called "Iron Curtain," a mixture of half Rumupleminze and Jagermeister. Since he was in no condition to drive, a friend drove him to his girlfriend's house, where he slept for a little more than 3 hours. Appellant stated he was going between 30 and 35 mph when he struck the victim. He claims he never saw the victim before striking him.

## DISCUSSION

To succeed on an ineffective-assistance-of-counsel claim, appellant must meet the two-pronged standard established in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). These prongs are (1) "that counsel's performance was deficient" and (2) that "the deficient performance prejudiced the defense." The latter prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *United States v. Wean,* 45 MJ 461, 463 (1997) (quoting *Strickland, supra* at 687, 104 S.Ct. 2052). Appellant fails to meet either prong.

There is a "strong presumption" that the defendant was adequately represented. "It is all too tempting ... to second-guess" a lawyer's performance, and the court should try to "eliminate the distorting effects of hindsight." *Strickland, supra* at 689, 104 S.Ct. 2052. There is no requirement to order affidavits when strategic or tactical decisions made·by counsel do not lead to a violation of the first prong of the test. The Court in *Strickland* held that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengable[.]" *Id.* at 690, 104 S.Ct. 2052.

Appellant asserts that he was denied effective assistance of counsel by his counsels' failure to call an accident reconstruction expert, Mr. Edward Livesay. An accident reconstruction report (dated June 16, 1995) prepared by Mr. Livesay first appeared as enclosure 56 of appellant's posttrial submission to the convening authority. Mr. Livesay admits that he conducted his survey long after the accident and that he relied·primari-

ly upon information provided to him by appellant. Nevertheless, he concluded that the victim was walking in the road when he was struck and that the accident was unavoidable. He suggests that the victim, an African-American, wearing camouflage and not wearing adequate reflective devices, would not have been visible to an approaching motorist at that time of the morning.

There are a number of tactical reasons why the defense may not have called Mr. Livesay as a defense witness. First, they had established during the prosecution's case that the victim was on the wrong side of the road and a sergeant was yelling at him to cross the road. Second, realizing the strength of the government case, the defense unsuccessfully sought to suppress the blood alcohol reading taken at 7:10 a.m. Failing to suppress the BAT, they sought to minimize it. Dr. Hugh J. Burford testified on cross-examination that there are a number of factors other than a blood alcohol test which will show whether an individual was impaired. Many of these favored the defense. The defense closed with a hypothetical, with Dr. Burford admitting that a good indication that the individual was not impaired is when an individual with training as an emergency medical technician "noticed an individual in distress; exited his vehicle; approached that individual, and" offered assistance. Third, the defense established through the government witnesses that some chemicals used on the arm before drawing the blood may slightly elevate the BAT. Fourth, the defense established that, while appellant passed SSG Johnson on MacRidge Road, she caught up with him at the stop sign before they turned. After they turned on Longstreet Road, she stayed within two or three car lengths, thus refuting the evidence that he was going more than 35 miles per hour. Additionally, because of the time of day, it was difficult to see someone who had reflectors on their person.

Whether inadvertent or not, the defense in their closing argument acknowledged that, even with the victim on the asphalt, as was their theory of the case, and with appellant traveling at approximately 35 miles an hour, appellant was negligent at least in the "civil" meaning of the term. This recognized what all the members knew. At a post like Fort Bragg, in the early morning hours, there are many formations on the road. Whether they are in a rucksack march or doing physical training, these individuals are on the asphalt and shoulder, and reasonable care requires drivers to use caution.[1] Appellant was fortunate to be found guilty of negligent homicide and not involuntary manslaughter.

The failure to call Mr. Livesay does not constitute deficient professional performance by appellant's defense counsel. Although the report and testimony by Mr. Livesay may have been favorable to the defense side, the decision not to call this witness falls within the spectrum of defense strategy. In light of the eyewitness testimony that contradicted the report, defense counsel may have discounted the evidentiary significance of the report based on the evidence they obtained during the prosecution case-in-chief. Thus, I dissent.

---

1. Many installations limit the speed when there is a formation on the road to approximately 10 miles per hour. In fact many speed limit signs have such limitations. However, in this case the local regulation which has the force of a local statute was not introduced.