UNITED STATES, Appellee,

v.

Sean G. GRIGORUK, Staff Sergeant,
U.S. Army, Appellant.

No. 98–1089.
Crim.App. No. 9600949.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 9, 1999.

Decided March 13, 2000.

GIERKE, J., delivered the opinion of the Court, in which SULLIVAN and EFFRON, JJ., and COX, S.J., joined. CRAWFORD, C.J., filed an opinion concurring in part and dissenting in part.

For Appellant: *David P. Sheldon* (argued); *Eugene R. Fidell, Mary Price,* and *Captain Steven P. Haight* (on brief); *Lynmarie Cusack, Gary R. Myers,* and *Captain Paul J. Perrone.*

For Appellee: *Captain Kelly D. Haywood* (argued); *Colonel Russell S. Estey, Lieutenant Colonel Eugene R. Milhizer,* and *Major Patricia A. Ham* (on brief); *Captain Arthur J. Coulter.*

Judge GIERKE delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of 2 specifications each of rape, sodomy, and indecent acts with a child under the age of 16, in violation of Articles 120, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 920, 925, and 934, respectively. The adjudged and approved sentence provides for a dishonorable discharge, confinement for 20 years, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence without opinion.

This Court granted review of the following issues:

### I

WHETHER TRIAL DEFENSE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HE FAILED TO (1) CALL AN EXPERT WITNESS WHO WOULD PROVIDE CREDIBLE EVIDENCE THAT SUPPORTED THE DEFENSE'S THEORY OF THE CASE; (2) CROSS–EXAMINE A NUMBER OF WITNESSES REGARDING PERTINENT FACTS IN DISPUTE; AND (3) STIPULATED TO DAMNING EVIDENCE.

### II

WHETHER THE REVIEWING COURT CONDUCTED MEANINGFUL APPELLATE REVIEW WHEN IT FAILED TO ORDER TRIAL DEFENSE COUNSEL TO SUBMIT AN AFFIDAVIT WHEN A VIABLE CLAIM FOR INEFFECTIVE ASSISTANCE OF COUNSEL HAD BEEN RAISED.

For the reasons set out below, we remand for further factfinding and review.

### Factual Background

The charges in this case were based on accusations by appellant's stepdaughter, DW. She was 4 years old at the time of the first alleged incidents, between 5 and 8 years old at the time of the second alleged incidents, and 9 years old at the time of trial.

Appellant and his ex-wife, an Army sergeant, were married for about 5 years and divorced about 1 year before the court-martial. DW was the natural daughter of appellant's wife and was about 2 years old when appellant married her mother. The subsequent divorce was the result of frequent separations and deployments, and appellant's extramarital affair. In a pretrial statement to agents of the U.S. Army Criminal Investigation Command (CID), appellant characterized the divorce as "coupled with animosity."

Anticipating a credibility battle between appellant and DW, defense counsel requested the convening authority to employ Dr. Ralph Underwager, a child psychologist, as an expert witness for the defense. After the convening authority denied the request, defense counsel asked the military judge for relief. Defense counsel represented that Dr. Underwager would support the defense theory that the accusations were fabricated by explaining the factors that cause a child to make false accusations. Specifically, the defense proffered that Dr. Underwager would provide expert testimony on four points relevant to the defense theory of the case:

(1) A conflicted family environment, particularly divorce and separation from parents, may influence a child to fabricate stories of abuse;

(2) Because children are more suggestible than adults, repeated questioning can teach or reinforce a false accusation;

(3) The initial assumptions of a child interviewer are a powerful determinant of what the child reports; and

(4) Consistent repetition is more indicative of learned behavior than actual memory.

The military judge ruled that the first three points were permissible areas of expert testimony. He ordered the Government to produce Dr. Underwager or a suitable substitute. He conditioned his ruling on the defense's ability to produce evidence of the underlying hypothetical facts on which Dr. Underwager would base his expert opinion.

DW testified at trial, describing the conduct on which the charges were based in graphic detail. She testified that appellant told her not to tell anyone about his conduct with her, but that she told a babysitter "[c]ause I had to tell somebody."

The prosecution presented the stipulated testimony of a medical doctor who had conducted a genital-rectal examination of DW and found her condition "normal." The doctor also stated that a "normal" diagnosis is not inconsistent with an allegation of sexual abuse.

The prosecution also presented the stipulated testimony of a CID agent who questioned appellant twice. The first time appellant categorically denied DW's accusations. Responding to questions about the source of DW's sexual knowledge, he told the CID that DW had entered his bedroom while he and his wife were engaged in sexual intercourse. He further stated that DW had entered the bedroom while appellant and his current girl friend were having sexual intercourse and that he had caught DW looking through the crack of the bedroom door when appellant thought she was asleep.

According to the CID agent, appellant was later confronted with the evidence and said, "I know something happened but not all that." After being advised that it would be in his best interest to cooperate with the investigation, appellant said, "I guess all I can do is try to plea bargain." Appellant's second statement was not reduced to writing. Appellant's ex-wife testified that she learned of appellant's conduct from the babysitter. She testified that she initially "could not believe that something of that nature had taken place." She admitted that employees of the Tennessee Department of Human Ser-

vices had mentioned the possibility that DW would be placed in a foster home if she did not support her daughter. She testified that DW had "told lies in the past." She testified that when DW had lied in the past, she and appellant "would usually confront her and drill her and, you know, question her over and over until she told the truth."

Appellant testified in his own defense and categorically denied the allegations. He described an incident of DW's destructive behavior, where, shortly after the birth of her younger brother, she went into the kitchen and destroyed everything related to the baby and his food. Appellant described a second incident when DW hit her younger brother in the back with a large toy. She initially blamed it on the babysitter, but finally admitted doing it. Appellant admitted having an extramarital affair and fathering a child by another woman. He testified that, as his marriage deteriorated, DW became hostile, and they grew distant.

The defense presented evidence of good character. A first sergeant testified that appellant was "a very good noncommissioned officer" and "a very good parent." Another first sergeant testified that appellant was a good soldier and "very honest." A friend and fellow noncommissioned officer testified that appellant was "a very good parent." A subordinate characterized him as "a great parent." Appellant's father characterized him as "a stern parent" but "a fair parent."

The defense did not present evidence from Dr. Underwager or any other expert in child psychology. In a post-trial affidavit filed with the court below, appellant asserts that his defense counsel told him shortly before the trial that he had decided not to use Dr. Underwager. According to appellant, defense counsel "believed the prosecution had some dirt on our intended expert which would be used in an attempt to discredit him and make him out as a hired gun going to the highest bidder." There is no affidavit from defense counsel in the record.

Appellant now asserts that his defense counsel were ineffective in three particulars: (1) failure to use Dr. Underwager, or any

other expert, to challenge DW's credibility; (2)failure to cross-examine the CID agents about the context of appellant's oral statements; and (3) stipulating to damning testimony of the medical doctor that a normal genital-rectal examination was not inconsistent with sexual abuse.

### Discussion

This Court has adopted the Supreme Court's test for effectiveness of counsel articulated in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), including the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). *See United States v. Scott*, 24 MJ 186, 188 (1987). In *United States v. Polk*, 32 MJ 150, 153 (1991), our Court adopted this three-pronged test to determine if the presumption of competence has been overcome:

(1) Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?

(2) If the allegations are true, did defense counsel's level of advocacy fall "measurably below the performance ... [ordinarily expected] of fallible lawyers"? and

(3) If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result.

■ Our Court "will not second-guess the strategic or tactical decisions made at trial by defense counsel." *See United States v. Morgan*, 37 MJ 407, 410 (1993). On the other hand, where it is not apparent what decisions were made or even that a strategic or tactical decision was made, further inquiry may be required. We will not, however, compel a defense counsel to justify decisions made at trial—

> until a court of competent jurisdiction reviews the allegation of ineffectiveness and the government response, examines the record, and determines that the allegation and the record contain evidence which, if unrebutted, would overcome the presumption of competence.

*United States v. Lewis*, 42 MJ 1, 6 (1995). We will also require an appellant to establish a factual foundation for a claim of ineffective representation. Sweeping, generalized accusations will not suffice. *See United States v. Moulton*, 47 MJ 227, 229 (1997).

■ Applying the foregoing principles, we hold that appellant has met the threshold for ordering further inquiry. This case was a classic credibility contest between appellant and DW. The record reflects that defense counsel prevailed on a contested motion to compel the production of Dr. Underwager or another equivalent expert. The defense established the factual predicate for the proffered expert testimony. Inexplicably, however, defense counsel did not call Dr. Underwager or any other expert to challenge DW's credibility. We hold that appellant has met the *Lewis* threshold for compelling defense counsel to explain his actions. *See United States v. Clark*, 49 MJ 98 (1998) (failure to call accident-reconstruction expert was ineffective representation).

■ With respect to appellant's remaining complaints about his counsel's performance, we hold that appellant has not met the *Lewis* threshold. Failure to cross-examine the CID agents is not ineffective representation, in the absence of evidence showing what that cross-examination might reasonably have accomplished. Similarly, stipulating to the medical doctor's testimony is not ineffective representation, in the absence of a showing that her testimony in person would have been more favorable to appellant.

### Decision

The decision of the United States Army Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Army for remand to the court below. That court will request an affidavit from defense counsel explaining why Dr. Underwager or any other expert in child psychology was not called to challenge DW's credibility. The court will obtain additional evidence if necessary, conduct further fact-finding in a manner consistent with *United States v. Ginn*, 47 MJ 236 (1997), and then

reconsider appellant's claim of ineffective representation. Thereafter, Article 67(a), UCMJ, 10 USC § 867(a) (1994), will apply.

CRAWFORD, Chief Judge (concurring in part and dissenting in part):

The majority has again [1] lost track of the real issue and refused to heed then-Chief Judge Cox's admonition in *United States v. Ingham:* the issue "is not what a certain expert might or might not have opined, but whether defense counsel was ineffective in contesting the assertions of the victim. Thus the question is—how did counsel deal with the witness' testimony." 42 MJ 218, 226 (1995), *cert. denied,* 516 U.S. 1063, 116 S.Ct. 745, 133 L.Ed.2d 693 (1996). Instead, this Court appears to be fashioning a rule that requires a trial defense counsel to submit a *written* explanation for his or her strategy whenever experts are used by defense counsel in pretrial preparation, but are not called to testify at trial. As I do not agree that this or any appellant can meet the first prong of the test set forth in *United States v. Polk,* 32 MJ 150 (CMA 1991), and establish ineffective representation by merely showing "some expert would have said something consistent with an accused's views," [2] I dissent from so much of the Court's opinion as holds that appellant has met the threshold for compelling defense counsel's explanation for not calling Dr. Underwager to testify.

In applying the Supreme Court's test for effectiveness of counsel, the starting point for examining counsel's presumed competence is "whether counsel had a reasonable trial strategy—one supported by the law and evidence." *Ingham, supra* at 224. My analysis of this record of trial shows the trial defense counsel had a reasonable strategy—attack the victim's credibility and put her truthfulness "squarely before the court members." *Id.* at 227. Since counsel is presumed competent, *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), this Court should accord trial defense counsel the presumption that he evaluated all the evidence and selected the strategy that

would most likely be successful. *See United States v. Fluellen,* 40 MJ 96, 98 (CMA 1994).

I completely agree with the majority's evaluation of this case as "a classic credibility contest between appellant and DW." 52 MJ at 315. Cross-examination of DW showed the factfinders that DW held appellant responsible for breaking up her home, for taking her brother away, and for marital fights. She further explained that appellant had treated her less fairly than he treated his natural child. Finally, both DW and appellant's father labeled him as a strict, no-nonsense disciplinarian. Coupled with testimony from the victim's mother that DW had made false statements in the past, trial defense counsel's strategy was to portray DW as a revenge-seeking liar and convince the court members that her allegations of being raped and sodomized by her stepfather were more falsehoods.

As the majority notes, the military judge's ruling, granting trial defense counsel's request for Dr. Underwager or other expert testimony, was "conditioned ... on the defense's ability to produce evidence of the underlying hypothetical facts on which Dr. Underwager would base his expert opinion." 52 MJ at 314. By returning this case to the lower court for additional factfinding concerning defense counsel's failure to produce expert testimony, the majority appears to assume that defense counsel could have laid the foundation that would have permitted Dr. Underwager to testify. I can make no such assumption.

Even if Dr. Underwager, a witness who had never interviewed the victim, had testified within those parameters laid out by the military judge and in accordance with his post-trial affidavit, his testimony would have been cumulative. In comparing Dr. Underwager's opinion, which trial defense counsel had during his pretrial preparations, to the defense counsel's trial strategy, the evidence of record convinces me that appellant's counsel effectively utilized Dr. Underwager's advice in his presentation of the defense case.

---

1. *See United States v. Clark,* 49 MJ 98, 101 (1998)(Crawford, J., dissenting).

2. *Ingham, supra* at 226.

Finally, had Dr. Underwager testified, the record of trial shows that the Government would have been allowed to counter with an expert of its own.

The Court's action today expands the first prong of the test we adopted in *Polk*, 32 MJ at 153, to now require a written explanation for counsel's actions in the defense of a court-martial, at least when dealing with expert testimony. It is clear that the majority *will* "second-guess" the strategic and tactical decisions of a trial defense counsel, contrary to our decision in *United States v. Morgan*, 37 MJ 407, 410 (1993). When use of expert testimony is at issue, I cannot agree that the requirement for a "reasonable explanation for counsel's actions," set out in *Polk* (32 MJ at 153) contemplated a written explanation from the trial defense counsel when the record of trial otherwise provides a cogent reason for a tactical decision. As I fear that this Court has fashioned a rule that will lead us back down the slippery slope of "battling affidavits," a practice we wisely discarded in *United States v. Lewis*, 42 MJ 1 (1995), and *United States v. Ginn*, 47 MJ 236 (1997), I respectfully dissent. Having found a plausible explanation within the pages of appellant's record of trial for trial defense counsel's failure to call Dr. Underwager as a witness, I would affirm the findings and sentence now.