**UNITED STATES, Appellee,**

v.

**Specialist Matthew M. CLARK, United States Army, Appellant.**

**ARMY 9501018.**

U.S. Army Court of Criminal Appeals.

12 June 2001.

For Appellant: Captain Kevin J. Mikolash-ek, JA (argued); Colonel Adele H. Odegard, JA; Lieutenant Colonel David A. Mayfield, JA; Major Jonathan F. Potter, JA (on brief following *DuBay* hearing).

For Appellee: Captain Karen J. Borgerd-ing, JA (argued); Colonel David L. Hayden, JA; Major Anthony P. Nicastro, JA (on brief following *DuBay* hearing).

Before CAIRNS, Senior Judge, BROWN, and VOWELL, Appellate Military Judges.

## OPINION OF THE COURT ON REMAND

VOWELL, Judge:

On 10 February 1997, this court affirmed the appellant's general court-martial conviction of drunken and reckless operation of a vehicle and negligent homicide,[1] in violation of Articles 111 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 911 and 934 [hereinafter UCMJ]. We affirmed the sentence of a dishonorable discharge, confinement for three years, and forfeiture of all pay and allowances. *United States v. Clark*, 45 M.J. 613 (Army Ct.Crim.App.1997). Subsequently, the appellant sought review by the United States Court of Appeals for the Armed Forces.

On 23 September 1998, our superior court set aside our decision and remanded this case to our court "to develop the record as necessary to resolve appellant's claim of ineffective assistance of counsel, by ordering affidavits from appellant's trial defense counsel and, if necessary, by ordering a hearing under *United States v. DuBay*, 17 USCMA 147, 37 CMR 411, 1967 WL 4276 (1967)." *United States v. Clark*, 49 M.J. 98, 101 (1998). We returned the record of trial to The Judge Advocate General for a limited *DuBay* hearing, which was completed on 15 September 1999, and the record was then returned to our court for further review. We have con-

---

1. The appellant was charged with involuntary manslaughter in violation of Article 119, UCMJ, 10 U.S.C. § 919, but was convicted of the lesser included offense.

sidered the original record, the record of the limited hearing, to include the military judge's findings of fact and conclusions of law, and the briefs and oral arguments of appellate counsel. We hold that the appellant has failed to demonstrate that his trial defense counsel's performance was deficient.

## FACTS

The facts of this case have been well summarized in the two published opinions. The appellant's car struck Specialist (SPC) McLean in the early morning hours as the appellant was driving to work and while SPC McLean was participating in a pre-dawn unit road march. The government's theory was that the appellant was tired, drunk, driving too fast for conditions, and driving in an erratic manner just prior to the collision, and that the appellant's car struck SPC McLean while SPC McLean was on the shoulder of the road. Expert testimony established that the appellant's blood alcohol concentration (BAC) at the time of the accident was between .16 and .17 and that such a concentration caused the appellant to be impaired in his operation of a motor vehicle.

The defense theory was that the accident was caused by SPC McLean's negligence in walking on the wrong side of the road and stepping into the roadway, and that the accident was unavoidable by any driver, regardless of the level of impairment. The defense contended that, in spite of his blood alcohol level, the appellant effectively used his emergency medical technician training to render aid to SPC McLean, and that those who observed his behavior did not see noticeable signs of impairment.

The accident scene was investigated by Fort Bragg, North Carolina, military police. The primary accident investigator was Sergeant (SGT) Hill. Prior to trial, the appellant's civilian defense counsel hired an accident reconstruction expert, Mr. Edward Livesay, who had considerably more training and experience than did SGT Hill. Mr. Livesay discussed the accident with the appellant, reviewed the military police accident report, and visited the accident scene himself. Based on his expertise and his investigation, Mr. Livesay prepared a report for the civilian defense counsel in which he disagreed with SGT Hill's conclusion that the point of impact was off the roadway. He also opined that the victim would not have been visible to the appellant and that the appellant's reaction time did not demonstrate any impairment caused by alcohol consumption.

At trial, the appellant's lead counsel was his detailed trial defense attorney, then Captain (CPT) Allen, the senior defense counsel for the 82d Airborne Division. The civilian defense counsel acted as co-counsel. Mr. Livesay was not called as a witness, and his report was not introduced. Mr. Livesay's report was, however, submitted to the convening authority as part of the post-trial submissions pursuant to Rules for Courts-Martial 1105 and 1106 [hereinafter R.C.M.] by the substitute military defense counsel appointed to represent the appellant after the reassignment of CPT Allen.

At the *DuBay* hearing, both Mr. Livesay and CPT Allen, who had since been promoted to Major (MAJ), testified. The civilian defense counsel, Mr. Mitchell, did not testify.

At the *DuBay* hearing, Mr. Livesay was accepted by the military judge as an expert in accident reconstruction and testified in accordance with the accident report he had earlier prepared. Mr. Livesay had a long-standing relationship with the civilian defense counsel's firm, but had always prepared reports for civil rather than criminal cases. He was asked to prepare a report in this case by Mr. Mitchell's legal assistant, Ms. Freeman. He customarily dealt with Ms. Freeman in such matters, and this case was no exception. He did not recall any direct contact with Mr. Mitchell or MAJ Allen on this case.

Mr. Livesay met the appellant at the accident scene and obtained the appellant's recollections of what transpired. After verifying certain measurements in SGT Hill's accident report, such as the width of the roadway, he prepared his own report for Mr. Mitchell. He testified that he had no preconceived notions about what transpired, and that he understood he was to provide his honest assessment of the case, including both

strengths and weaknesses he discovered. As he put it, Mr. Mitchell wanted him to "read the cards before he [Mr. Mitchell] played poker."

Mr. Livesay testified that SGT Hill erred when he determined that the point of impact between the appellant's car and the victim occurred off the roadway. Based on SGT Hill's sketch of the accident scene, the location of the first traces of blood found, and the place where SPC McLean came to rest after the accident, Mr. Livesay concluded that SPC McLean was approximately two to three feet onto the roadway when he was struck. He testified that Newton's First Law of Motion observed that an object in motion would travel in a straight line, unless acted upon by some outside force. He analogized this to the trajectory of a baseball after being struck by a bat. By drawing a line between the first blood traces and the place where the victim's body came to rest, he determined the point of impact by extending the straight line. His drawing (contained in Appellate Exhibit XXVI) placed the victim on the roadway at the time of impact.[2]

Mr. Livesay applied the same law of motion to the appellant's vehicle, determining from the skid marks and the vehicle's final resting place the probable path of the appellant's vehicle before and after the impact. He testified that the eyewitness accounts, which suggested that the appellant swerved back onto the roadway after the accident and accelerated before braking, were inconsistent with his reconstruction, based on the physical evidence.

Although he relied on SGT Hill's measurements at the scene in forming his opinion, Mr. Livesay rejected the investigator's observation that more of the glass from the appellant's car windows was on the shoulder of the road than on the roadway itself. Since the point of impact of SPC McLean's body was at or near the midpoint of the vehicle and the windows appeared to be equally shattered, SGT Hill used this finding to conclude that the point of impact occurred off the roadway, as the glass would spray out equally in all directions from the point of impact.

At the *DuBay* hearing, the appellant's mother, Mr. Livesay, and the appellant himself all testified that they expected Mr. Livesay to appear as a defense witness at trial. Ms. Freeman informed Mr. Livesay at some unknown time that his testimony would not be required. The appellant's mother was informed during the course of the trial that the defense team had decided against calling him. The appellant testified that he was not informed by his attorneys that Mr. Livesay would not testify, although in his *Grostefon* submissions, the appellant indicated he was aware sometime after the trial began that Mr. Livesay would not testify.

The appellant's trial defense counsel testified about his decision not to call Mr. Livesay. At the time of the appellant's trial, MAJ Allen had ten years of experience, primarily in litigation. In addition to three years in private practice, he had served as a trial counsel, senior trial counsel, defense counsel, and senior defense counsel at three different military locations. Major Allen also commented that his co-counsel, Mr. Mitchell, had extensive trial experience, and that his firm had particular expertise in defending drunk driving cases. Although both attorneys handled pretrial matters, they divided the trial issues, and MAJ Allen was not involved in the decision to hire Mr. Livesay.

Prior to trial, MAJ Allen reviewed Mr. Livesay's written report. He felt Mr. Livesay's conclusion that the victim was on the roadway at the time of impact was very helpful to the defense theory of the case, but he was concerned about Mr. Livesay's conclusion that the appellant was not impaired. Major Allen testified that such a conclusion

---

2. Although not challenged by the *DuBay* trial counsel, we have some difficulties with this "baseball" analogy. Human bodies do not resemble symmetrical baseballs, and the irregular surfaces that SPC McLean's body struck do not resemble the smooth surface of a baseball bat. Additionally, the car, the pavement, and the shoulder of the road could certainly qualify as "outside forces," causing SPC McLean's body to move in something other than a straight line. We also note that the record of trial shows the victim's M16 rifle embedded in the appellant's shattered windshield and car console, suggesting that it may have influenced his direction of travel after impact.

could not be supported based solely on the physical evidence, and therefore, must have stemmed from Mr. Livesay's conversations with the appellant. Mr. Mitchell used the report to prepare what MAJ Allen characterized as his very effective cross-examination of SGT Hill.

The defense team's goal in the trial was to reduce the appellant's culpability by demonstrating the victim's contributory negligence, without conceding the appellant's guilt. The attorneys concluded that once they lost their motion to suppress the BAC test results, the evidence of the appellant's BAC was an insurmountable obstacle to a complete acquittal. At the time MAJ Allen made the decision against calling Mr. Livesay, he believed the posture of the case was very favorable to the defense. First, SGT Hill's expertise had been effectively challenged. Second, defense and government witnesses had testified that the victim was on the wrong side of the road at the time of impact and was walking on the actual roadway at times during the road march. Third, MAJ Allen believed the primary government eyewitness, who had placed the appellant off the roadway at the time he struck SPC McLean, had made a poor impression with the court members because she became argumentative and partially contradicted herself on the stand.

Major Allen identified three risks in calling Mr. Livesay. First, his assessment was that the court members understood the victim's contributory negligence without the need for Mr. Livesay's testimony and that Mr. Livesay's testimony might backfire, particularly during cross-examination. Second, as a defense-hired expert, Mr. Livesay could appear to be a "hired gun." Major Allen did not believe that the court members would look favorably on a paid expert, and other witnesses had at least raised significant doubt

about SPC McLean's location at the time of impact. Third, Mr. Livesay's testimony carried the risk of disclosure of the content of Mr. Livesay's conversations with the appellant. Since the appellant testified on his own behalf at trial, the appellant's statements to Mr. Livesay raised the possibility of inconsistencies.[3] Since Mr. Livesay could not effectively rebut the BAC evidence, his testimony would not help in reducing the appellant's culpability below simple negligence, and carried the risk of interjecting possibly inconsistent statements into the trial. Major Allen did not personally interview Mr. Livesay before deciding not to call him as a witness.

Although MAJ Allen made the decision not to call Mr. Livesay, Mr. Mitchell concurred. Major Allen recalled that Mr. Mitchell was concerned that this decision be conveyed to the appellant, and MAJ Allen testified that the appellant was aware that Mr. Livesay would not be called.

Our own review of the record and the matters presented at the *DuBay* hearing reveals additional pitfalls in Mr. Livesay's testimony and report.[4] Mr. Livesay's report indicated that the appellant was probably driving too fast for the conditions, which included poor lighting, reduced visibility due to smoke or haze, and pedestrians walking on and near the roadway. Mr. Livesay's own sketch of the scene shows at least a portion of the appellant's vehicle on the shoulder of the roadway at the point of impact with SPC McLean. Additionally, Mr. Livesay conceded at the *DuBay* hearing that the appellant's blood alcohol level might well have been a causative factor in the collision.

## DISCUSSION

In *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established the following

3. Any experienced defense attorney would be wary of the possibility of inconsistencies. Knowing that the appellant intended to testify in his own defense, his attorneys would have at least two specific concerns. First, Mr. Livesay might attribute to the appellant statements inconsistent with the appellant's own testimony, thereby undercutting the appellant's credibility. Second, in interviewing Mr. Livesay, counsel might find themselves faced with the ethical dilemma most

feared by the defense bar—that caused by the possibility of client perjury.

4. Once the defense called Mr. Livesay as a witness, the government was entitled to a copy of his report. *See* R.C.M. 701(b)(1)(A), 701(b)(4); Military Rule of Evidence 705; *see generally United States v. Mansfield,* 33 M.J. 972, 985 (A.F.C.M.R.1991), *aff'd,* 38 M.J. 415 (C.M.A. 1993).

standard to measure claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

We apply the *Strickland* test for determining ineffective assistance of counsel claims in the military justice system. *United States v. Scott*, 24 M.J. 186 (C.M.A.1987). Counsel are presumed to be competent. *United States v. Ingham*, 42 M.J. 218, 223 (1995). An appellant must overcome this strong presumption by demonstrating that his counsel's performance was "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052. As the Supreme Court observed: "Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689, 104 S.Ct. 2052. We recognize that trial advocacy is an art, not a science, and that reasonable trial attorneys will differ over strategy and tactics in the course of a trial. *United States v. MacCulloch*, 40 M.J. 236, 239 (C.M.A.1994). We will not second-guess tactical decisions made in the crucible of the courtroom so long as they fall within the broad range of professional competence.

Our superior court determined that the appellant had met his "threshold burden" to demonstrate that his counsel's performance was ineffective. *Clark*, 49 M.J. at 99. The appellant established the availability of an expert, provided the substance of the expert's opinion, and alleged that the expert's opinion was relevant and material to the issues in the case. The "threshold burden" merely indicates that the appellant has established a prima facie case of ineffective assistance. The test applied is "whether appellant's assertions, if left unrebutted, would meet the *Strickland* standard and appellant would be entitled to relief as a matter of law." *Id.* at 100. Under these circumstances, the government may respond by either demonstrating that counsel's performance comported with prevailing professional norms or that the appellant was not prejudiced by his counsel's shortcomings. *See United States v. Lewis*, 42 M.J. 1 (1995).

The remand of appellant's case to this court requires us to determine, based on the original record of trial and the *DuBay* record, if the appellant's claims meet the two prongs of the *Strickland* test. Determinations of the effectiveness of counsel are mixed questions of law and fact. We review the *DuBay* judge's factual findings under a clearly erroneous standard, but review the ultimate questions of deficient performance and prejudice de novo. *United States v. Wean*, 45 M.J. 461, 463 (1997). We hold that the appellant has failed to establish that his counsel's performance was deficient. Assuming, arguendo, that his counsel's performance was deficient, we hold that any deficiency in performance did not deprive the appellant of a fair trial.

This case falls somewhere between those ineffective assistance of counsel cases involving claims of inadequate investigation or preparation by defense counsel and those involving tactical or strategic decisions made in the course of hotly contested trials. *Compare Scott*, 24 M.J. at 192, *and United States v. Gibson*, 51 M.J. 198 (1999), *with United States v. Morgan*, 37 M.J. 407 (C.M.A.1993). Generally speaking, military courts have applied the Supreme Court's caution concerning the "distorting effects of hindsight" most liberally in those cases involving tactical decisions made in the course of trial, but have applied closer scrutiny to claims of failure to investigate. The issue of expert witnesses, and in particular, the failure to seek expert assistance, *see Wean*, 45 M.J. at 463–64, or to call an expert already made available, *see United States v. Grigoruk*, 52 M.J. 312, 314–

15 (2000), are treated more like a failure to investigate, at least in determining if the appellant has met his threshold burden to demonstrate ineffective assistance.

In *Wean*, for example, our superior court found that the defense's response to the government's use of expert witnesses, coupled with the defense's failure to use expert witnesses at all, "demonstrated a lack of understanding of the law and a failure to properly research and investigate appellant's case." *Id.* at 463. *Wean*, however, differs factually from the appellant's case.

The appellant's counsel in this case sought and obtained expert assistance. They received and reviewed Mr. Livesay's report. They effectively employed that report in their cross-examination of the government expert. While neither MAJ Allen nor Mr. Mitchell talked directly to Mr. Livesay about his report, Mr. Mitchell's firm had used Mr. Livesay in previous accident litigation, and his relative strengths and weaknesses as an expert and as an expert witness would presumably be known to Mr. Mitchell. Mr. Mitchell did not challenge MAJ Allen's conclusion that Mr. Livesay's testimony was not necessary.

Counsel normally have an obligation to interview witnesses who may have relevant and material evidence. *See Scott*, 24 M.J. at 192. That professional responsibility may be delegated to co-counsel or even to trained assistants. When an expert witness with whom a defense counsel is familiar provides a report, and that counsel has sufficient understanding of the facts and the area of expertise to comprehend the report, we will not, per se, find deficient performance based on the failure to conduct a personal interview. Under the facts of this case, we do not find the failure of either counsel to interview Mr. Livesay about his report to be deficient performance. We have examined Mr. Livesay's report ourselves, and applying our fact-finding powers under Article 66(c), UCMJ, 10 U.S.C. § 866(c), find it to be readily comprehensible by an attorney of even limited experience in traffic accident reconstruction.

We recognize that Mr. Livesay's *Du-Bay* testimony supplemented his report in one major respect. He provided additional information concerning perception and reaction time, and thus bolstered his conclusion that the appellant applied his brakes within the normal reaction time expected of an unimpaired driver. The question remains, however, whether such additional information, if known to the defense team, would have altered their tactical decision not to call him as a witness.

We find MAJ Allen's explanation of the factors that militated against calling Mr. Livesay highly persuasive. While calling Mr. Livesay might have "balanced the scales" in terms of having a counter to SGT Hill's expert testimony, MAJ Allen's assessment of the benefits versus the risks is entitled to considerable weight. Mr. Livesay's conclusion that SPC McLean was actually on the paved roadway at the time he was struck would have done little to counter the evidence that the appellant was drunk, had only a few hours of sleep, had been observed driving erratically just prior to the collision, was aware of road marchers in the area, and had limited visibility due to poor lighting and haze. Moreover, the appellant's failure to curtail his speed under these conditions was evidence, at the very least, of simple negligence, notwithstanding SPC McLean's possible or probable presence in the roadway.

Additionally, Mr. Livesay's testimony made his report discoverable. His conclusion, for example, that SPC McLean may have been turning to cross the roadway at the time he was struck was based on the fracture of SPC McLean's left arm. The autopsy report, however, indicates that both of SPC McLean's arms were fractured. Likewise, Mr. Livesay relied on SGT Hill's measurements at the scene, but opined that SGT Hill's observation of the glass debris as more off the road than on the road was faulty, although SGT Hill actually saw the glass and Mr. Livesay only speculated. Also, Mr. Livesay's own sketch of the accident scene shows a portion of the appellant's car on the shoulder of the road at the point of impact. The report would have provided the trial counsel with significant fodder for cross-examination.

Finally, and most compellingly, Mr. Livesay relied upon statements of the appellant in making his report. Not only did this raise the possibility of conflict or apparent inconsistency with the appellant's testimony at trial, it would have permitted the trial counsel to question the reliability of Mr. Livesay's conclusions. The appellant's trial testimony about his friend "Chris" who purportedly ferried the appellant from the bar to his girlfriend's house on the evening before was frankly incredible. A reasonable factfinder might well conclude that the appellant's statements to Mr. Livesay bore some of the same indicia of unreliability, casting further doubt on Mr. Livesay's conclusions. Rather than merely help counsel "read the cards," Mr. Livesay's testimony ran the risk of exposing the defense counsel's whole hand.

We hold that MAJ Allen's stated reasons for failing to call Mr. Livesay as a witness at trial represent a reasoned, tactical call of an experienced trial attorney. *See Scott,* 24 M.J. at 188 (reasonableness is to be evaluated from counsel's perspective, considering all the attendant circumstances). We will not second-guess him. *See United States v. Davis,* 52 M.J. 201, 204 (1999).

■■■■ Assuming, arguendo, that the appellant has established the first prong of the *Strickland* test, we also hold that the failure to call Mr. Livesay did not deprive the appel-

lant of a fair trial. Nothing in Mr. Livesay's testimony or report would have altered the facts demonstrating at least simple negligence; in fact, his testimony and report would have buttressed them. Mr. Livesay conceded at the *DuBay* hearing that the appellant was driving too fast for the conditions. The court members did not find the appellant guilty of manslaughter by culpable negligence. They came to the same conclusion as Mr. Livesay—that the appellant's acts constituted simple negligence—without the benefit of Mr. Livesay's testimony. We cannot, therefore, find any appreciable risk that the trial results were flawed based on Mr. Livesay's failure to testify. The appellant was convicted based on the weight of the evidence, not due to any deficiencies in his counsel's performance.[5]

Our original decision of 10 February 1997 remains in effect. *See United States v. Ginn,* 47 M.J. 236, 238 n. 2 (1997).

Senior Judge CAIRNS and Judge BROWN concur.

---

5. We also note that the use of Mr. Livesay's report in the clemency submissions gave the appellant the best of both worlds by allowing him to challenge the trial results without exposing the report's weaknesses or exposing himself to cross- examination concerning his statements to Mr. Livesay.