# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39284**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Mia Donte T. KNOX**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 12 September 2018

————————————

*Military Judge:* Christina M. Jimenez.

*Approved sentence:* Bad-conduct discharge, confinement for 1 year, pay a fine of $22,970.25, and reduction to E-1. Sentence adjudged 3 March 2017 by GCM convened at Wright-Patterson Air Force Base, Ohio.

*For Appellant:* Captain Mark J. Schwartz, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Captain Michael T. Bunnell, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, DENNIS, and LEWIS, *Appellate Military Judges.*

Senior Judge JOHNSON delivered the opinion of the court, in which Judge DENNIS and Judge LEWIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

JOHNSON, Senior Judge:

Appellant, in accordance with her pleas pursuant to a pretrial agreement, was found guilty by a military judge of one specification of attempted larceny of over $500.00 on divers occasions, one specification of negligent dereliction of duty, seven specifications of larceny of over $500.00, and 11 specifications of

wrongfully using personal identifying information to the prejudice of good order and discipline, in violation of Articles 80, 92, 121, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 892, 921, 934. A general court-martial composed of officer members sentenced Appellant to a bad-conduct discharge, confinement for one year, a fine of $22,970.25 payable to the United States, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.[1]

Appellant raises a single issue on appeal: whether Appellant was denied effective assistance of counsel at her trial.[2] We find she was not, and we affirm the findings and sentence. However, we also address certain discrepancies in the post-trial process, some of which require corrections to the court-martial order.

## I. BACKGROUND

Appellant was a force management apprentice assigned to the force support squadron at Wright-Patterson Air Force Base, Ohio. In that position, Appellant had access to the personally identifiable information (PII) of other Airmen, including dates of birth and social security numbers. Between approximately 21 April 2015 and 27 August 2015, Appellant used the PII of 11 other individuals—mostly Airmen who were acquaintances of Appellant—and other false information to apply online for unsecured personal loans from Pioneer Services, a division of MidCountry Bank.[3] These individuals had not authorized Appellant to do so and were at the time unaware their identities were being exploited in this way. Some of these applications were successful; others were denied or voided for various reasons. Appellant stole a total of $22,970.25 from MidCountry Bank and attempted to steal $20,500.00 more. Appellant did not intend to repay the loans and, as of the time of her court-martial, had made no repayment or restitution to MidCountry Bank.

Eventually, the bank conducted an investigation into Appellant's fraudulent activities, which led them to her. The Air Force Office of Special Investigations (AFOSI) became aware of the investigation and secured a search authorization for Appellant's on-base residence. There, in a duffel bag, AFOSI

---

[1] The pretrial agreement provided the convening authority would not approve confinement in excess of 36 months and thus did not affect the adjudged sentence.

[2] Appellant personally raises this issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[3] In addition to her duty-related access to PII, Appellant gained access to the PII of certain individuals through personal contact outside of her military duties.

agents discovered official documents Appellant had wrongfully removed from her workplace containing the PII of an additional 12 Air Force members.

Appellant was represented by Major (Maj) RVM and Maj SH[4] at the initial session of her court-martial, an arraignment and motions hearing held on 1–2 November 2016. Thereafter, Appellant released Maj RVM and retained two civilian defense counsel, KS and GG. Maj SH also continued to represent Appellant. The new defense team negotiated a pretrial agreement with the convening authority, in accordance with which Appellant pleaded guilty and was sentenced as described above in proceedings conducted from 28 February 2017 until 3 March 2017.

## II. DISCUSSION

### A. Ineffective Assistance of Counsel

#### 1. Law

The Sixth Amendment guarantees an accused the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *See Gilley*, 56 M.J. at 124 (citing *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)). Accordingly, we "will not second-guess the strategic or tactical decisions made at trial by defense counsel." *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009) (internal quotation marks and citation omitted). We review allegations of ineffective assistance de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *Mazza*, 67 M.J. at 474).

We utilize the following three-part test to determine whether the presumption of competence has been overcome:

> 1. Are [A]ppellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?
>
> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?
>
> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

---

[4] Maj SH was a captain at the time and throughout Appellant's court-martial.

*Gooch*, 69 M.J. at 362 (second alteration in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

### 2. Analysis

Appellant submitted a short declaration expressing her dissatisfaction with her "legal team," without naming or identifying any particular counsel. She states they added to her "stress" and to her sense of being "very overwhelmed" at her trial. She continues, "I had the feeling as if they were telling more than asking me what I wanted . . . . I noticed information and issues I was sharing to them were not being addressed [or] mentioned ever." However, Appellant specifically describes only one such issue:

> Early on I informed my lawyers of my now ex husband['s] role; however it became on[e] of those things they tried to brush off, but I kept pushing the issue. They never attempted to locate my ex and gave me the explanation of, "it isn[']t in [sic] a good idea since he could paint you in a bad way." I take full responsibility 100% but I left that court feeling as if the most important and major part of my case was ignored.

At the Government's request, this court ordered affidavits from all four of Appellant's trial defense counsel. Accordingly, all four counsel signed declarations responding to Appellant's allegation of ineffective assistance. Their statements are generally consistent with one another. Trial defense counsel were aware Appellant's ex-husband moved out of the shared residence in August 2015 and the couple went through an acrimonious divorce in 2016 before Appellant's trial. Maj RVM and Maj SH unsuccessfully attempted to contact Appellant's ex-husband via a contact number included in the AFOSI report of investigation (ROI). Appellant either could not or would not provide better contact information for him. However, trial defense counsel considered this no great loss because they had no reason to believe he would have been of any assistance at trial. There was no indication in the ROI or evidence that he was directly involved in Appellant's crimes. He was apparently on poor terms with Appellant and there was no reason to believe he would be motivated to assist her. In fact, information in the ROI suggested he may have damaging information about additional uncharged misconduct by Appellant. For these reasons, trial defense counsel did not seek the Government's assistance in locating the ex-husband. As KS put it, Appellant's defense team "did not want him anywhere near this court-martial."

To the extent there is a contradiction between Appellant's declaration and those of her trial defense counsel—specifically, Appellant's claim that her counsel "never attempted" to locate her ex-husband—we have considered

whether a post-trial evidentiary hearing is required to resolve a factual dispute. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967). We are convinced such a hearing is unnecessary. The appellate filings and the record as a whole "compellingly demonstrate" Maj RVM and Maj SH attempted to contact Appellant's ex-husband with the limited information they had available. *See Ginn*, 47 M.J. at 248. More importantly, even if we resolved this contradiction in Appellant's favor, her allegations would not result in relief. *See id.*

Applying the test for ineffective assistance of counsel articulated in *Polk* and *Gooch*, we find there is a reasonable explanation for trial defense counsel's failure to contact Appellant's ex-husband. First, they attempted to do so but were unable with the limited information available to them. Second, their decision not to request the Government's assistance in locating him was reasonable in light of the indications that his involvement in the case would be of no substantial help to Appellant, and in fact could lead the Government to additional damaging information. Therefore, it follows that trial defense counsel's performance did not fall measurably below that ordinarily to be expected of defense attorneys. *See Gooch*, 69 M.J. at 362.

Finally, Appellant has entirely failed to demonstrate that absent the alleged error the result of her court-martial would have been more favorable. *See id.* Appellant does not explain what her ex-husband's "role" in fact was or how his testimony or involvement would have influenced her trial. At trial, Appellant's guilty plea colloquy with the military judge and her unsworn statement to the court members contained only very vague references to a "bad relationship" and a "horrible situation," which shed no light on how her ex-husband's involvement would have been helpful. Accordingly, we find no basis to conclude Appellant was denied effective assistance of counsel.

## B. Post-Trial Discrepancies

Although not raised by Appellant, we address several discrepancies in the post-trial processing of Appellant's case. First, Rule for Courts-Martial (R.C.M.) 1107(f)(4)(C) requires the convening authority's action on a court-martial sentence to "designate the place of confinement" if the convening authority orders any sentence of confinement into execution. Customarily in the Air Force, the action in such a case where the accused has not yet completed the term of confinement would include the direction that the "Air Force Corrections System is designated for the purpose of confinement and the confinement will be served therein" or elsewhere as directed by the Air Force Security Forces Center, or words to that effect. *See Manual for Courts-Martial, United States* (2016 ed.)*,* App. 16, at A16–1; Air Force Instruction 51-201, *Administration of Military Justice*, Figure A8.13 (8 Dec. 2017). However, in Appellant's

case the convening authority's action states: "The Air Force Corrections System is *designed* for the purpose of confinement, and the confinement will be served therein or elsewhere as directed by Headquarters, Air Force Security Forces Center, Corrections Division." (Emphasis added.) Although unorthodox, we find this language compliant with R.C.M. 1107(f)(4)(C), notwithstanding the absence of the term "designate."

Second, the report of result of trial (RRT) attached to the staff judge advocate's recommendation to the convening authority omits certain language from four of the specifications. Specifically, the term "on or about" is omitted from a portion of the date range alleged in these specifications.[5] We find no colorable showing of possible prejudice from the error, and therefore no basis for relief. *See United States v. Scalo*, 60 M.J. 435, 436–37 (C.A.A.F. 2005). However, these omissions are repeated in the court-martial order.[6]

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.[7]

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[5] The specifications in question are Specification 1 of Charge I and Specifications 1, 2, and 5 of Charge IV.

[6] The court-martial order also repeats the RRT's misspelling of "MidCountry Bank" in Charge III, Specification 7.

[7] We direct the publication of a corrected court-martial order to remedy the errors identified in this opinion.