UNITED STATES

v.

Troy B. JENKINS, Quartermaster
Third Class (E–4), U.S. Navy.

NMCCA 200101151.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 29 Nov. 2000.

Decided 15 Nov. 2005.

Charles W. Gittins, Civilian Defense Counsel.

LT B.L. Mizer, JAGC, USNR, Appellate Defense Counsel.

LCDR Thomas P. Belsky, JAGC, USNR, Appellate Defense Counsel.

LT Colin A. Kisor, JAGC, USNR, Appellate Defense Counsel.

LT Elysia G. Ng, JAGC, USN, Appellate Defense Counsel.

LT Lars C. Johnson, JAGC, USNR, Appellate Government Counsel.

Capt Glen R. Hines Jr., USMC, Appellate Government Counsel.

Before DORMAN, Chief Judge, PRICE, and CARVER, Senior Judges.

DORMAN, Chief Judge:

The appellant was tried by a general court-martial composed of a military judge sitting alone. Consistent with his pleas, the appellant was convicted of rape and forcible sod-

omy. Contrary to his pleas, the appellant was convicted of committing an indecent act by engaging in sodomy with the victim of the rape and forcible sodomy, while in the presence of another person. The appellant's crimes violated Articles 120, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925, and 934. The adjudged and approved sentence consists of confinement for 12 years, forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge. Upon taking action, the convening authority granted clemency to the appellant by suspending confinement in excess of 9 years for a period of 5 years from the date of the action.

In an unpublished decision issued on 30 January 2003, we previously took corrective action in this case. In that decision, this court dismissed the Article 134, UCMJ, offense, which alleged the commission of an indecent act. Additionally, the court reassessed the sentence, reducing the approved confinement by 6 months, but otherwise affirming the findings and the sentence as approved by the convening authority.

On 21 June 2004 our superior court set aside our decision because the text of our previous opinion included verbatim replication of substantial portions of the Government's Answer without attribution. After reviewing our decision, the court stated that it was "left in doubt that [the] [a]ppellant received the independent Article 66(c) review to which he was entitled." *United States v. Jenkins*, 60 M.J. 27, 29 (C.A.A.F.2004). In spite of the fact that this court specifically stated that it had conducted our review in accordance with Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c), and had dismissed Charge III and its specification on a different legal theory than had been advanced by the appellant, our superior court concluded that it could not determine that the appellant had "received the 'awesome, plenary, and de novo' review to which he was entitled by law." *Id.* at 30 (citing *United States v. Duncan*, 38 M.J. 476, 479 (C.M.A. 1993)); *see also United States v. Cole*, 31 M.J. 270, 272 (C.M.A.1990). As a result, the case was remanded to our court for "a new Article 66(c) review before a panel comprised

of judges who have not previously participated in this case." *Jenkins*, 60 M.J. at 30.

The appellant initially raised five assignments of error. The appellant challenged the providence of his guilty pleas to rape and forcible sodomy, claiming that the plea inquiry revealed the existence of the defense of mistake of fact and that the military judge failed to advise the appellant of this defense. The appellant also alleged that his guilty plea to rape is improvident because the plea inquiry did not establish the element of force and lack of consent. Additionally, the appellant alleged that he was deprived of the effective assistance of counsel, asserting that his trial defense counsel failed to investigate the circumstances surrounding his sworn statement given to investigators or a potential mistake of fact defense, and that his counsel failed to recognize that the appellant's comments during the providence inquiry gave rise to that defense. The appellant also argued that his conviction for forcible sodomy and indecent acts constituted an unreasonable multiplication of charges. Finally, the appellant alleged that his sentence is inappropriately severe.

Following receipt of the case from our superior court, we offered the appellant an opportunity to submit additional assignments of error. Accordingly, his counsel now asserts that the appellant has been denied his right to a speedy review of his conviction. The appellant also raised two issues pursuant to his right under *United States v. Grostefon*, 12 M.J. 431, 436 (C.M.A.1982), namely a petition for a writ of habeas corpus, seeking his release from confinement and monetary compensation for each day he has been confined, and a petition for a new trial. These matters were filed on 23 and 24 September 2004, respectively. Additionally, we specified an issue to counsel concerning the scope of review.

Finally, on 29 September 2005 the appellant filed a motion for leave to file another supplemental assignment of error. That motion is hereby granted. In this new assignment of error the appellant argues that his conviction should be set aside because the examiner who conducted the DNA analysis in his case subsequently confessed to falsifying

test results in some cases. The Government was not required to file an answer to this assignment of error.

Knowing the process that this court uses to decide the cases that come before it, and trusting in the integrity and word of the judges who participated in the initial decision of this case, we have no doubt that this court reached its initial decision after full compliance with Article 66(c), UCMJ. Nevertheless, in compliance with the remand from our superior court, we have now afforded the appellant an entirely new review in accordance with our statutory mandate.

In conducting that review, we have carefully considered the record of trial, the appellant's initial and supplemental assignments of error, the appellant's brief concerning the specified issue, the appellant's issues raised pursuant to *Grostefon*, and the reply briefs filed by the appellant's counsel. We have also considered the briefs filed by the Government in response to the appellant's assignments of error and its brief concerning the specified issue. Finally, we considered the excellent oral arguments presented by Captain J.S. Stephens, USMC, on the appellant's behalf, and Lieutenant M.H. Herrington, JAGC, USNR, on behalf of the Government. Following our consideration of all these matters, we conclude that the findings, as affirmed by our decision of 20 January 2003, and sentence, as modified herein, are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant remains. Arts. 59(a) and 66(c), UCMJ.

### Facts

The victim of the appellant's crimes was Ms. D. Since several of the appellant's assignments of error assert that his guilty pleas are improvident, we will set forth a summary of the facts as related by the appellant during the providence inquiry.

On the evening of 4 August 2000, the appellant was out with Seaman (SN) Mark Metcalf. During the evening, the appellant consumed about five glasses of wine. After midnight, during the early morning hours of 5 August 2000, the appellant was driving back to SN Metcalf's apartment, located in military housing in Bremerton, Washington.

While driving through the parking lot of a Denny's restaurant, the appellant saw Ms. D getting into a car. Although the appellant did not know Ms. D, he waved to her and shouted a greeting. Ms. D walked to the appellant's car and asked, "Can you get me out of here?" Record at 28. The appellant said that he could, and Ms. D got into the back seat of the car. SN Metcalf then joined her in the back seat. When Ms. D got into the car she began crying and was "very distraught." *Id.* at 29. Ms. D asked the appellant to get her out of there, and to take her to a hotel or anywhere. Since the appellant was already on the way to SN Metcalf's apartment, he took her there. The appellant could not hear what SN Metcalf and Ms. D talked about as he drove to the apartment.

When they arrived at the apartment, around 0145, SN Metcalf and Ms. D went straight to the bedroom. The appellant went to the sofa in the living room. The appellant did not know why SN Metcalf and Ms. D went to the bedroom. When Ms. D came out of the bedroom, 15 minutes later, she was wearing a red tank top and a black leather jacket. She also had her pocketbook. The appellant heard Ms. D say, "I'm out of here. I'm leaving." *Id.* at 28. The appellant never heard the door open, but he did hear a fall.

Shortly after hearing a fall, he heard SN Metcalf ask him to come over. The appellant went into the hallway and saw that SN Metcalf was holding Ms. D down on the floor. She was in a seated position, with her back against the wall. SN Metcalf was kneeling in front of her and he had her pinned up against the wall. SN Metcalf then told the appellant to get some condoms out of his bedroom. The appellant got some condoms and put one on. When he came back into the hallway, SN Metcalf had Ms. D perform oral sex on the appellant. The appellant did not think that Ms. D wanted to perform oral sex.

[M]J: Did you think she wanted to have oral sex with you or she didn't want to?

ACC: No, no, sir. She didn't want to.

MJ: Did she do something to let you know she didn't want to?

ACC: No, sir.

MJ: Was it because Metcalf was—

ACC: Yes, sir, because Metcalf forced her. He told her to do it. She was—I believe she was in fear of her life or she was—you know, she was traumatized, and she did it because Metcalf told her to do it.

MJ: So as far as you understood, if she had not done what Metcalf told her to do, she was afraid of what Metcalf would do to her?

ACC: Yes, sir.

*Id.* at 34–35.

Although the appellant did not know what SN Metcalf had done to Ms. D, the appellant did hear the fall and saw SN Metcalf holding her down, pinning her against the wall. Ms. D never gave any indication to the appellant that she wanted to have oral sex with him and they never discussed it. The appellant, however, acknowledged that Ms. D did not consent to performing the oral sex.

MJ: Now, did you think that this act of sodomy of oral sex was done by force?

ACC: Yes, sir.

MJ: And what force was that?

ACC: Because she wanted to leave. Metcalf stopped her from leaving. He caused her to stop struggling. She was put in a compromising situation, and she did what he told her to do.

MJ: She did it because he told her to, not because she wanted to?

ACC: Yes, sir, because he told her to.

*Id.* at 37.

When the oral sex with the appellant was completed, SN Metcalf told Ms. D to go to the bedroom. SN Metcalf walked behind her, holding her elbows and pushing her into the bedroom. *Id.* at 38. The appellant heard SN Metcalf tell Ms. D to take her shirt off. He also heard a sound, like her head hitting the wall, and she started to moan. "[S]he said 'Ow' to indicate that she was in pain or she was hurt." *Id.* at 39. After it got quiet in the bedroom, the appellant walked into the bedroom. When the appellant went into the bedroom, his penis was already erect and he was wearing a condom. As he entered the room, he saw SN Metcalf ejaculate onto Ms. D's face. *Id.* at 41. SN Metcalf then told the appellant, "Okay. Go ahead." The appellant wiped the semen off of Ms. D's face and then engaged in sexual intercourse with her.

While the appellant was having sex with Ms. D, she was awake and she looked at the appellant. She did not make any noises or have any reaction. Ms. D did not give the appellant any indication that she wanted to have sex with him.

MJ: So under the circumstances, why do you think she had sex with you?

ACC: Because she was scared, sir, from all of what had happened. She tried to leave the apartment. Metcalf stopped her. He forced her to the ground. That was the indication right then and there that she wanted to leave the apartment.

*Id.* at 41–42. The appellant also acknowledged that although Ms. D did not resist the sexual intercourse it was because she knew that it would have been futile or would not work. It was for that reason that Ms. D had sex with the appellant.

Also while the appellant was having sex with Ms. D, she asked for water. Initially the appellant refused to get her any. When she persisted, the appellant left the bedroom to get her water. While he was gone from the room, Ms. D jumped out of the bedroom window, located on the second floor of the apartment complex. The appellant then heard the downstairs neighbors saying, "Call the ambulance. Call the police." *Id.* at 42.

## Scope of Review

■ The Court of Appeals for the Armed Forces remanded this case to us "for a new Article 66(c) review...." *Jenkins,* 60 M.J. at 30. Previously our superior court stated that "a Court of Criminal Appeals 'can only take action that conforms to the limitations and conditions prescribed by the remand.'" *United States v. Riley,* 55 M.J. 185, 188 (C.A.A.F.2001) (quoting *United States v. Montesinos,* 28 M.J. 38, 44 (C.M.A.1989)). In its remand in *United States v. Riley,* 50 M.J. 410, 416 (C.A.A.F.1999), our superior court clearly demonstrated its ability to narrowly prescribe the scope of review upon remand. Since the remand from our superior court in this case was clear that we were to conduct a new review under Article 66(c), UCMJ, we must first determine the scope of

that review. Accordingly, this court specified the following issue:

> THE NMCCA DECISION DATED 30 JANUARY 2003 HAVING BEEN SET ASIDE, MAY THIS COURT, DURING THE ARTICLE 66, UCMJ, REVIEW, AFFIRM *ALL* OF THE FINDINGS AND SENTENCE *AS APPROVED BY THE CONVENING AUTHORITY?*

N.M.Ct.Crim.App. Order of 21 Mar 2005.

We answer the specified issue in the negative. Although we believe an affirmative answer is not constitutionally barred, the scope of our review is limited by the holding in *United States v. Crider*, 46 C.M.R. 108, 110, 1973 WL 14459 (C.M.A.1973). In *Crider* our superior court concluded that the Navy Court of Military Review had erred when it reinstated Lance Corporal Crider's conviction for premeditated murder after a prior panel of the Navy court had only approved a conviction of unpremeditated murder. Our superior court concluded that, "an accused who obtains review here does not forgo the right to beneficial action taken on his behalf by the Court of Military Review when he secures reversal of that court's action." *Id.* This holding was recently reaffirmed in *United States v. Leak*, 61 M.J. 234, 244 (C.A.A.F. 2005), wherein the court quoted language from *Crider*, that "an accused cannot come to harm by appealing here and securing reversal of his conviction." *Id.* (quoting *Crider*, 46 C.M.R. at 110); *see Riley*, 55 M.J. at 188.[1]

Finding that we are bound by the holding in *Crider*, we will consider that portion of the earlier decision of this court, setting aside the findings of guilty to Charge III and its specification, to be the law of the case. Solely because the earlier decision set aside that charge and specification, so too shall we.

### Providence of the Appellant's Guilty Pleas

The appellant challenges the providence of his guilty pleas on several grounds. First he argues that his statements to the military judge during the providence inquiry raised a mistake of fact defense and that the military judge failed to address this defense. Appellant's Brief of 11 Jun 2002 at 5–12. He also attacks the providence of his guilty plea to rape, alleging that the military judge's inquiry into the factual basis for the plea does not establish that the sexual intercourse was committed by force and without Ms. D's consent. Appellant's Brief at 16–18.

■ A military judge may not accept a guilty plea to an offense without inquiring into its factual basis. Art. 45(a), UCMJ, 10 U.S.C. § 845; *United States v. Care*, 40 C.M.R. 247, 1969 WL 6059 (C.M.A.1969). Before accepting a guilty plea, the military judge must ordinarily explain the elements of the offense, and must ensure that a factual basis for the plea exists. *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F.2002); *United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F.1996); *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A.1980); Rule for Courts-Martial 910(e), Manual for Courts-Martial, United States (2000 ed.), Discussion. Acceptance of a guilty plea requires an appellant to substantiate the facts that objectively support the guilty plea. *United States v. Schwabauer*, 37 M.J. 338, 341 (C.M.A.1993); R.C.M. 910(e).

> The standard of review to determine whether a plea is provident is whether the record reveals a substantial basis in law or fact for questioning the plea. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991). Such rejection must overcome the generally applied waiver of the factual issue of guilt inherent in voluntary pleas of guilty. The only exception to the general rule of waiver arises when an error prejudicial to the substantial rights of the appellant occurs. R.C.M. 910(j); Art. 59(a), UCMJ.

*United States v. Dawson*, 50 M.J. 599, 601 (N.M.Ct.Crim.App.1999).

---

1. An argument can be made that none of these three cases, *Crider*, *Leak*, or *Riley*, is controlling. In each of those cases, the Court of Military Review or the Court of Criminal Appeals had exercised its fact-finding powers under Article 66(c), UCMJ, to initially grant relief to the appellant. In the case before us, the predecessor panel of this court granted relief on a question of law, finding the charge and specification it dismissed to be a lesser included offense of a charge and specification it affirmed.

Based upon his guilty pleas, the appellant was convicted of rape and forcible sodomy. Prior to discussing the factual basis for the appellant's pleas with him, the military judge advised the appellant of the elements of these two offenses. Record at 16, 19. In addition the military judge tailored the elements to the language of the specifications, and he also provided the appellant with relevant definitions. The appellant apparently understood the definitions and the elements.

■■■ The appellant now points to various statements he made on the record that he argues give rise to a mistake of fact defense. He does not, however, assert that he engaged in oral sodomy and sexual intercourse with Ms. D believing that she consented to those sexual activities with him. The appellant also ignores the requirement that for a mistake of fact defense to exist, with respect to the crimes for which he stands convicted, the mistake of fact would need to be both honest and reasonable. *United States v. Hibbard*, 58 M.J. 71, 72 (C.A.A.F.2003). We hold that a review of the facts clearly results in the conclusion that, even if the appellant believed that Ms. D had willingly engaged in sexual activity with him, the belief would not have been reasonable. Ms. D had never met the appellant prior to the evening the offense occurred. She performed fellatio upon the appellant while SN Metcalf had her pinned to a wall and after SN Metcalf directed her to perform the sexual act. The sexual intercourse with the appellant occurred immediately after SN Metcalf had engaged in sexual activity with her and ejaculated onto her face, and after SN Metcalf then told the appellant, "Okay. Go ahead." Record at 41.

■■■ The appellant also asserts that the providence inquiry does not establish a factual basis for concluding that the sexual intercourse between the appellant and Ms. D involved force and a lack of consent. While we agree that the record does not establish actual force, it is abundantly clear that it does establish constructive force. Constructive force is sufficient. *Leak*, 61 M.J. at 246; *United States v. Simpson*, 58 M.J. 368, 377 (C.A.A.F.2003). As the facts set forth above reveal, the appellant informed the military judge that although Ms. D did not resist the sexual intercourse, it was because she was scared and knew it was futile to do so. Record at 41–42, 44. With respect to both of the appellant's assignments of error concerning the providence of his pleas, we note that the military judge specifically addressed the issue of mistake of fact with the trial defense counsel, and counsel informed the military judge that the defense was fully explored and that it was not a legal defense to the charges. *Id.* at 44–45.

Applying the appropriate standards of review, set out above, we do not find a substantial basis in law or fact to question the appellant's guilty pleas to rape and sodomy. Rather, what is exhibited in this record and in the appellant's assignments of error are the appellant's attempts to rationalize and minimize his criminal misconduct.[2] Such rationalization and minimization, however, does not invalidate an otherwise legally sufficient guilty plea. *See United States v. Penister*, 25 M.J. 148, 153 (C.M.A.1987) (Cox, J. concurring). Accordingly, we hold that the appellant's guilty pleas are provident.[3]

### Effective Assistance of Counsel

The appellant's second assignment of error is framed by his affidavit submitted to this court, as well as allegations contained in his later *Grostefon* submissions. The essence of

---

2. For example, the appellant seeks to compare his case to *United States v. Adams*, 33 M.J. 300 (C.M.A.1991). No reasonable comparison can be made between the two cases. Adams was convicted of carnal knowledge of his niece. At the time of the offense, Adams was in his own bed, and in a state of semi-awareness, when his niece got in bed with him and initiated sexual relations with him. Adams told the military judge, who accepted his guilty plea, that when he began having sex with his niece he thought she was his wife. The Court of Military Appeals found that Adams' plea was not provident because he raised an unresolved issue concerning the identity of the victim.

3. Contrary to the earlier decision of this court in this case, we did not consider the testimony of Ms. D in concluding that the appellant's guilty pleas are provident. We did consider her testimony and the remainder of the record to determine if either her testimony or other evidence of record raised matters inconsistent with the appellant's guilty pleas, as well as on the issue of sentence appropriateness.

the appellant's argument is that his counsel failed to investigate the appellant's sworn statement made to the Naval Criminal Investigative Service. He claims that, had his counsel done so, she would have recognized that the appellant potentially had a defense of mistake of fact. He also alleges that his counsel failed to recognize that his statements during the providence inquiry gave rise to the same defense. The appellant also inferentially challenges the advice his counsel provided him, to plead guilty even without a pretrial agreement "in an effort to obtain leniency from the military judge." Appellant's Brief at 16.

In reviewing allegations of ineffective assistance of counsel we conduct a *de novo* review. *United States v. McClain*, 50 M.J. 483, 487 (C.A.A.F.1999) (citing *United States v. Wean*, 45 M.J. 461, 463 (C.A.A.F.1997)). In conducting that review, we are bound to adhere to the standards set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland* the Supreme Court declared that:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S.Ct. 2052. Additionally, the Supreme Court reasoned that:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy

for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Id.* at 689, 104 S.Ct. 2052. In *United States v. Scott*, 24 M.J. 186, 188 (C.M.A.1987), our immediate superior court made clear that these same standards are equally applicable before military courts.

Accordingly, military appellate courts have routinely applied these standards. In order to show ineffective assistance of counsel, "an appellant 'must surmount a very high hurdle.'" *United States v. Smith*, 48 M.J. 136, 137 (C.A.A.F.1998)(quoting *United States v. Moulton*, 47 M.J. 227, 229 (C.A.A.F.1997)). When viewing tactical decisions by counsel, the test is whether such tactics were unreasonable under prevailing professional norms. *See United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F.2001) (citing *Strickland*, 466 U.S. at 688–90, 104 S.Ct. 2052); *United States v. Babbitt*, 26 M.J. 157, 158 (C.M.A. 1988) (citing *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)); *Scott*, 24 M.J. at 188 (citing *Cronic*, 466 U.S. at 648, 104 S.Ct. 2039). We will not second-guess those tactical decisions. *United States v. Morgan*, 37 M.J. 407, 410 (C.M.A.1993) (quoting *United States v. Rivas*, 3 M.J. 282, 289 (C.M.A.1977)); *United States v. Clark*, 55 M.J. 555, 560 (Army Ct. Crim.App.2001), *aff'd*, 56 M.J. 203 (C.A.A.F. 2001).

In reviewing claims of ineffective assistance of counsel, it is strongly presumed that counsel are competent in the performance of their representational duties. *United States v. Quick*, 59 M.J. 383, 386 (C.A.A.F. 2004); *Anderson*, 55 M.J. at 201; *Scott*, 24 M.J. at 188. To rebut the presumption of competence of counsel, the appellant is required to point to specific errors committed by his counsel that were unreasonable under prevailing professional norms. *Scott*, 24 M.J. at 188 (citing *Cronic*, 466 U.S. at 648, 104 S.Ct. 2039). "Acts or omissions that fall within a broad range of reasonable approaches[, however,] do not constitute a deficiency." *United States v. Dewrell*, 55 M.J. 131, 133 (C.A.A.F.2001). Further, the appellant must establish a factual foundation for a

claim that his counsel's representation was ineffective. *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F.2000). An appellant's "[s]weeping, generalized accusations will not suffice." *Id.* (citing *Moulton*, 47 M.J. at 229).

Our superior court has also held that "[c]ounsel have a duty to perform a reasonable investigation or make a determination that an avenue of investigation is unnecessary." *United States v. Sales*, 56 M.J. 255, 258 (C.A.A.F.2002) (citing *United States v. Brownfield*, 52 M.J. 40, 42 (C.A.A.F.1999)). Further, " '[w]e do not look at the success of a . . . trial theory, but rather whether [trial defense] counsel made an objectively reasonable choice in strategy from the alternatives available at the time.' " *Dewrell*, 55 M.J. at 136 (quoting *United States v. Hughes*, 48 M.J. 700, 718 (A.F.Ct.Crim.App.1998)).

▆▆▆ This court need not reach the question of deficient representation if we can first determine a lack of prejudice. *Quick*, 59 M.J. at 386; *United States v. Adams*, 59 M.J. 367, 371 (C.A.A.F.2004) (quoting *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052). In order to constitute prejudicial error, the appellant's trial defense counsel's deficient performance must render the result of the proceeding "unreliable" or "fundamentally unfair." *See United States v. Ingham*, 42 M.J. 218, 223 (C.A.A.F.1995) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)).

We now apply those standards to the case before us. First, it is not clear whether the appellant is suggesting that his statements could have been suppressed had his counsel investigated the circumstances surrounding the appellant's interrogation by the Naval Criminal Investigative Service. Furthermore, he has not asserted any facts that suggest the statement was involuntary or obtained in violation of his constitutional or statutory rights. For an appellant to prevail on an allegation of ineffective assistance of counsel premised upon counsel's failure to move to suppress evidence, the appellant " 'must show that there is a reasonable probability that such a motion would have been meritorious.' " *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F.2001) (quoting *United States v. Napoleon*, 46 M.J. 279, 284

(C.A.A.F.1997)). The appellant has not made such a showing.

▆▆▆ Second, the essence of the appellant's argument is that, had his attorney investigated his statement, "she would have ultimately discovered that Appellant did not know of SN Metcalf's behavior towards [Ms. D] until after his encounter with [Ms. D]. Appellant learned of SN Metcalf's behavior only when he read the results of [Ms. D]'s statement indicating that SN Metcalf punched her in the stomach and forced her to the ground." Appellant's Brief at 14 (internal citations omitted.) The appellant then concludes that, because his counsel failed to investigate the statement, she did not realize that he had a mistake of fact defense. He also claims that his counsel failed to recognize the defense during the providence inquiry itself.

There are several significant flaws in the appellant's argument. To begin, the appellant ignores the law, that for a mistake of fact defense to apply to the charges of rape and sodomy, both general intent offenses, the mistake of fact would need to be both honest and reasonable. *Hibbard*, 58 M.J. at 72; R.C.M. 916(j). We have already held that this defense was not raised during the providence inquiry. In considering his allegation that he was denied effective assistance of counsel, we have also examined the appellant's statement given to investigators, Prosecution Exhibit 2. The content of that statement is even more damaging to the appellant's position, and clearly does not lend support to a mistake of fact defense. If anything, it supports the conclusion that, even if the appellant believed Ms. D had not been forced into the sexual offenses to which the appellant pled guilty, or that she consented to them, the basis for that belief could not have been reasonable. Finally, we note that the record refutes the appellant's allegations that his counsel had failed to investigate the possibility of this defense.

MJ: Lieutenant [M], I need to ask you if you had a sufficient opportunity to inquire into all the potential defenses of lack of manifestation of resistance or mistake of fact here?

DC: Yes, sir.

MJ: Okay. I realize that Petty Officer Jenkins is doing his best to be completely honest with me, and I just want to make sure that you had all the chance you have to—

DC: We've explored it thoroughly, sir.

MJ: Okay. And you're convinced that it's within the interest of justice for him to enter a guilty plea on this kind of case?

DC: Yes, sir. I don't see that he has a legal defense.

Record at 44–45.

Additionally, it is equally clear that the appellant's counsel explored the possibility of a pretrial agreement. The appellant acknowledged that his counsel informed him that the convening authority would not agree to a pretrial agreement limiting confinement to less than 25 years. Appellant's Affidavit of 6 Jun 2002 at 2. We also note that in a letter to the convening authority the appellant references the pretrial negotiations and a comment by his trial defense counsel concerning "constructive force." Appellant's Letter to Convening Authority of 8 Jun 2001, Enclosures. We will not second-guess her advice to the appellant to forgo a 25–year "deal" and seek leniency from the trial judge, particularly where the adjudged sentence was less than half of what the convening authority had in mind.

Accordingly, following a *de novo* review of the issues, we conclude that the appellant has failed to meet his burden of demonstrating that he was deprived of effective legal counsel. We reject the appellant's sweeping, generalized allegations of ineffectiveness and find no merit in his argument that his counsel failed to recognize an available defense, primarily because we hold that the record does not give rise to such a defense. Finding no deficient performance, we are confident that the appellant was provided with competent and effective assistance of counsel. Upon review, we are left with no question concerning the fairness and reliability of the results of the appellant's criminal trial.

**Impact of a Questionable DNA Analysis**

█ In a supplemental assignment of error, the appellant seeks to have the findings and sentence set aside, and asks this court to authorize a rehearing. The basis for this assignment of error is the disclosure by the Government that the examiner who conducted DNA tests in the appellant's case has admitted to making a false entry in a test conducted in an earlier case. The same examiner was suspended for permitting sample contamination during DNA testing in 2004. As of May 2005, the examiner had been suspended from DNA case work. Based upon this disclosure, the appellant argues that, "[b]ecause the examiner that tested the DNA samples in Appellant's case has been deemed incompetent by the United States Army, and has admitted to fraudulently reporting false results, this Court cannot affirm Appellant's conviction." Appellant's Supplemental Brief of 29 Sep 2005 at 2. The appellant argues, "[T]he fact that the [G]overnment possessed DNA evidence that positively identified Appellant as having had intercourse with the alleged victim ... certainly impacted Appellant's decision to plead guilty if it was not entirely responsible for it." *Id.* at 3.

We find this argument disingenuous. The appellant entered his guilty pleas on 29 November 2000. Two documents before us, both provided by the appellant, indicate that the results of the DNA testing concerning the appellant were not complete until either 12 or 13 December 2000. The listing of cases in which DNA testing was performed by the suspended examiner, attached as Appendix B to the Appellant's Supplemental Brief of 29 September 2005, lists a "comp" date of "12/12/2000" for the DNA testing performed in the appellant's case. An investigation report attached to the appellant's *Grostefon* filing of 23 September 2004 states that the Army Criminal Investigation Laboratory reported the appellant's DNA test results to the Naval Criminal Investigative Service on 13 December 2000. Also attached to that filing is a document indicating that the testing had been conducted by 28 November 2000. We have no evidence the appellant was aware of the results when he plead guilty, one day later.

We further note that the appellant confessed to his involvement with Ms. D on 6 Au-

gust 2000, long before any DNA testing was conducted. That confession was far more incriminating than the results of the DNA testing, results that were not even released until after the appellant pleaded guilty. Those results, which only show that the appellant's semen was found in a condom, are not surprising. The appellant had admitted to wearing a condom, and to ejaculating into it while Ms. D performed fellatio on him. Prosecution Exhibit 2.

The appellant seeks a new trial based upon newly discovered evidence, that being the misconduct of the lab technician who examined the appellant's DNA samples. We deny the appellant's request for the following reasons:

1. The appellant has not demonstrated any link between the DNA testing and his decision to plead guilty. Other evidence we have before this court, evidence filed by the appellant himself, proves that the results of the DNA testing could not have had any impact on the appellant's decision to plead guilty.

2. R.C.M. 1210(f)(2) provides that "[a] new trial shall not be granted on the grounds of newly discovered evidence unless the petition shows that ... [t]he newly discovered evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for the accused." The appellant has failed to make that showing. Furthermore, the appellant's conviction was not secured by the results of the DNA testing. There is no evidence that the results concerning testing done relative to the appellant are inaccurate. In fact, the appellant admitted in his 6 August 2000 statement that he had ejaculated into a condom and then discarded it at the apartment. Finally, if the appellant had pleaded not guilty, the limited DNA evidence pales by comparison to the other evidence of the appellant's guilt that was available to the Government in this case.

Accordingly, having considered this supplemental assignment of error, we decline to grant relief.

## Sentence Appropriateness

■ The appellant argues that a sentence including 12 years confinement and a dishonorable discharge is inappropriately severe. He forwards two arguments to support his position. First, he notes that SN Metcalf received only 4 months confinement and a bad-conduct discharge for his related crimes. Second, he argues that his "actions were ... more the result of bad judgment and a failure to realize a 'questionable situation' than the act of a sexual predator[,]", and that he did not "threaten or intimidate" Ms. D. Appellant's Brief at 19 (quoting record at 44, 171).

In *United States v. Lacy,* 50 M.J. 286, 288 (C.A.A.F.1999), the Court of Appeals for the Armed Forces set forth a three-prong test for evaluating claims of sentence disparity: first, determine how closely related the cases are; second, evaluate whether the sentences are in fact, highly disparate; and, finally, identify whether any rational basis exists for the disparity.

We agree with the appellant that the cases are closely related. We also agree that the sentences received by the appellant and SN Metcalf are highly disparate. The appellant, however, does not even attempt to analyze the disparity. Although both cases stem from the same factual setting, the results of trial significantly differ. In his recommendation to the convening authority concerning the action to take in the appellant's court-martial, the staff judge advocate advised the convening authority about the results of SN Metcalf's case. He wrote:

This is a companion case to Seaman Mark O. Metcalf, ... tried by a General Court-martial ... Seaman Metcalf's court-martial forum was members with enlisted representation. Seaman Metcalf plead guilty to a violation of Article 125 (consensual sodomy) ..., but not guilty to the remaining charges and specifications. SN Metcalf was found guilty of violations of the UCMJ, Article 125 (consensual sodomy) and Article 134 (adultery). Sentence adjudged: to be reprimanded, to be reduced to pay grade E–1; to be confined for 120 days; and to be discharged from the service with a bad[-]conduct discharge.

Staff Judge Advocate's Recommendation of 20 Apr 2001 at 3.

When considering SN Metcalf's results of trial, it is readily apparent why there is a disparity in the sentences between the two cases. The fact that the appellant was convicted of far more serious misconduct than was SN Metcalf is a sufficient rational basis for the disparity. Based upon the offenses of which he was convicted, SN Metcalf faced a possibility of dishonorable discharge and 6 years confinement. The appellant faced a possible sentence of a dishonorable discharge and confinement for life without eligibility for parole. *See Lacy*, 50 M.J. at 289 (noting that it is appropriate to consider the disparity in relation to the potential maximum punishment).

Accordingly, we find the appellant's claim that his sentence is inappropriately severe, due to its disparity with the sentence of SN Metcalf, to be unpersuasive. Based on the entire record, including the impact of the appellant's crimes on the victim,[4] the appellant's evidence presented in extenuation and mitigation and the appellant's unsworn statement, we further find that the appellant's sentence is not inappropriately severe for this offender and these offenses. Art. 66(c), UCMJ; *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A.1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180–81, 1959 WL 3587 (C.M.A.1959)). Accordingly, we decline to grant relief.

### Post–Trial Delay

In a supplemental assignment of error filed on 14 January 2005, the appellant asserts that he has been denied his right to timely appellate review of his case. The appellant has not requested specific relief. He does, however, allege prejudice. First, he argues that if a rehearing is authorized in his case, the passage of time alone will have prejudiced his ability to present a defense or favorable evidence. We find that argument speculative in nature. Second, he argues that the delay in his case will result in his losing the clemency granted to him by the convening authority.

In fact, when the convening authority suspended confinement in excess of 9 years, he conditioned the suspension upon the appellant's "successful completion of the Violent Offender Program at the Naval Consolidated Brig...." Convening Authority's Action of 15 Jun 2001 at 2. The appellant asserts that the Commanding Officer of the Brig intends to recommend that the suspension be revoked. Further, the appellant asserts that a vacation hearing was held on 20 December 2004, and that the hearing officer informed him that she was recommending the vacation of the suspended sentence because he had been dropped from the Violent Offender Program for being disruptive. At oral argument, neither the Government counsel nor the appellant's counsel could inform this court of the status of the vacation proceedings. Nevertheless, even if the suspended sentence was vacated, our action with respect to the approved sentence moots the appellant's second argument concerning prejudice.

A chronology of relevant dates will assist an understanding of the post trial delay issue.

| Date | Action | Days Elapsed Between Events | Total Days Since Date of Trial |
|------|--------|----------------------------|--------------------------------|
| 29 Nov 00 | Date of Trial | 0 | 0 |
| 28 Jun 01 | Case Received at NAMARA | 211 | 211 |
| 11 Jun 02 | Appellant's Brief Filed | 348 | 559 |
| 22 Nov 02 | Government's Answer Filed | 164 | 723 |
| 30 Jan 03 | NMCCA Decision Issued | 69 | 792 |

4. Ms. D was seriously injured when she jumped, nude, through the screen window from the bedroom where the appellant had just raped her and fell 14 feet to the ground. Ms. D was medevaced from the scene by helicopter.

| 31 Oct 03 | Petition Granted at CAAF | 274 | 1066 |
|---|---|---|---|
| 21 Jun 04 | CAAF Decision Issued | 234 | 1300 |
| 25 Aug 04 | CAAF Mandate Issued | 65 | 1365 |
| 10 Sep 04 | Case Re-docketed at NMCCA | 16 | 1381 |
| 23 Sep 04 | Supplemental Assignment of Error Filed | 13 | 1394 |
| 05 Oct 04 | NMCCA Grants Stay | 12 | 1406 |
| 10 Jan 05 | NMCCA Lifts Stay | 97 | 1503 |
| 14 Jan 05 | Supplemental Assignment of Error Filed | 4 | 1507 |
| 08 Mar 05 | Government's Answer Filed | 53 | 1560 |
| 14 Mar 05 | Appellant's Motion for Oral Argument Filed | 6 | 1566 |
| 13 Jul 05 | Oral Argument at NMCCA | 121 | 1687 |
| 29 Sep 05 | Supplemental Assignment of Error Filed | 78 | 1765 |
| 15 Nov 05 | NMCCA Decision Issued | 46 | 1811 |

██ We consider four factors in determining whether post-trial delay violates the appellant's due process rights: (1) the length of the delay, (2) the reasons for the delay, (3) the appellant's assertion of the right to a timely appeal, and (4) prejudice to the appellant. *United States v. Jones,* 61 M.J. 80, 83 (C.A.A.F.2005) (citing *Toohey v. United States,* 60 M.J. 100, 102 (C.A.A.F.2004); *see also Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). If the length of the delay itself is not unreasonable, there is no need for further inquiry. If, however, we conclude that the length of the delay is "facially unreasonable," we must balance the length of the delay with the other three factors. *Id.* Moreover, in extreme cases, the delay itself may " 'give rise to a strong presumption of evidentiary prejudice.' " *Id.* (quoting *Toohey,* 60 M.J. at 102).

██ Here, the appellant's focus is on the entire period of delay. As we examine each step in the appellate process, we find no individual step to have been facially unreasonable. Furthermore, given the appellate history itself, we do not find the total delay to this point to have been facially unreasonable.

Assuming *arguendo* that the delay was facially unreasonable, we find no due process violation. First, the appellate record itself provides the explanation for the delay in this case. Second, the appellant did not assert a demand for timely appellate review until 14 January 2005. We do note that on 1 October 2004 the appellant filed an opposition to the Government's motion to stay the proceedings. But then, after the Government filed its answer in March 2005, the appellant moved for oral argument. The Government opposed that motion. Second, as explained above, we have no evidence of actual prejudice attributable to the delay. Thus we conclude that there has been no due process violation due to post-trial delay.

We are also aware of our authority to grant relief under Article 66, UCMJ, but we decline to do so. *United States v. Oestmann,* 61 M.J. 103, 106 (C.A.A.F.2005); *Toohey,* 60 M.J. at 100; *Diaz v. Judge Advocate General*

of the Navy, 59 M.J. 34, 37 (C.A.A.F.2003); United States v. Tardif, 57 M.J. 219, 224 (C.A.A.F.2002). In Tardif our superior court made clear that this court could grant relief without a showing of actual prejudice in those cases where there has been excessive post-trial delay. The court said that we could grant relief "if [we] deem[ed] relief appropriate under the circumstances." Tardif, 57 M.J. at 224. The court also made clear that we are required to consider unexplained and unreasonable post-trial delay in determining "what findings and sentence 'should be approved.'" Id. What is equally clear from Tardif is that while we are required to consider unexplained and unreasonable post-trial delay in determining what findings and sentence should be approved, whether we grant relief and, if granted, the nature of that relief, is a matter left to the discretion of this court.

We do not condone excessive delay. While we do not find such delay in this case, we recognize that the case could have been processed more quickly at virtually every step of the chronology detailed above. That is not the standard, however, and we will not grant a windfall to the appellant. United States v. Diaz, 61 M.J. 594, 613 (N.M.Ct.Crim.App. 2005), rev. granted, No. 05–0500, 2005 CAAF LEXIS 1238 (C.A.A.F. Oct. 27, 2005).

### Conclusion

Because we are bound by the relief afforded the appellant by the decision of a different panel of this court on 30 January 2003, we set aside the appellant's conviction of Charge II and its specification. That charge and specification are dismissed. Consequently, the remaining assignment of error concerning an allegation of unreasonable multiplication of charges is moot. Additionally, the appellant's petition for a writ of habeas corpus is denied.

As a result of our action on the findings, we have reassessed the sentence in accordance with the principles of United States v. Cook, 48 M.J. 434 (C.A.A.F.1998), United States v. Peoples, 29 M.J. 426, 428 (C.M.A. 1990), and United States v. Sales, 22 M.J. 305, 307–08 (C.M.A.1986). Upon reassessment of the sentence, we approve only so much of the sentence as extends to confinement for 9 years, reduction to pay grade E–1, forfeiture of all pay and allowances, and a dishonorable discharge. We have afforded more relief to the appellant than was afforded by the earlier decision of this court because there is no indication in the record that the military judge considered the offense we have dismissed to have been multiplicious for sentencing purposes with the remaining offenses. A supplemental promulgating order, reflecting the findings and sentence as modified by this decision, shall be issued.

Senior Judge CARVER and Senior Judge PRICE concur.