# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**R.Q. WARD, J.R. MCFARLANE, K.M. MCDONALD**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

**v.**

**DONALD J. MCALLISTER**
**CHIEF HOSPITAL CORPSMAN (E-7), U.S. NAVY**

**NMCCA 201300086**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged**: 25 October 2012.
**Military Judge**: LtCol Charles Hale, USMC.
**Convening Authority**: Commander, Navy Region Mid-Atlantic, Norfolk, VA.
**Staff Judge Advocate's Recommendation**: LCDR S.J. Gawronski, JAGC, USN.
**For Appellant**: Frank J. Spinner, Esq.; LT Jessica Fickey, JAGC, USN.
**For Appellee**: LT Ann Dingle, JAGC, USN.

**20 March 2014**

---------------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas, of violating two lawful general orders,[1] one specification of maltreatment, and

---
[1] One specification alleged a violation of the Department of the Navy's Policy on Sexual Harassment, Secretary of the Navy Instruction 5300.26D (3 Jan 2006), and the other alleged a violation of the Department of the Navy's Policy on Fraternization, Chief of Naval Operations Instruction 5370.2C (26 Apr 2007).

one specification each of aggravated sexual contact, wrongful sexual contact, and abusive sexual contact, in violation of Articles 92, 93, and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 893, and 920 (2008).  The military judge sentenced the appellant to 14 years' confinement, reduction to pay grade E-1, and a dishonorable discharge.  The convening authority (CA) approved the sentenced as adjudged and, pursuant to a pretrial agreement, suspended all confinement in excess of seven years.

In his appeal, the appellant argues that his trial defense counsel (TDC) was ineffective on two accounts; first, by informing the appellant that he had no defense when in fact a viable mistake of fact defense existed; and second when TDC failed to obtain a personal clemency letter from the appellant to submit to the CA.

After carefully considering the record of trial and the submissions of the parties, we are convinced that the findings and the sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant was committed.  Arts. 59(a) and 66(c), UCMJ.

**Background**

At the time of the offenses, the appellant was a 32-year-old independent duty corpsman assigned to a small command located at Newport, Rhode Island.  Over an approximate two year period, he frequently sexually harassed one of his subordinate corpsmen in the medical clinic, HM2 1.  Although married with two children, the appellant, a bisexual, was sexually attracted to HM2 1 and made repeated and unwelcome sexual advances toward him.  During his guilty plea inquiry, the appellant acknowledged that his behavior took an "aggressive" tone when he persistently asked HM2 1 for sexual favors and sexually suggestive photographs of HM2 1 and his girlfriend.  Record at 79-81, 87. He also admitted that his behavior spanning nearly two years caused HM2 1 to suffer mentally.  *Id*. at 84-88.

Additionally, on three separate occasions, the appellant administered an intravenous injection (IV) to a junior corpsman containing the drug "Phenergan" and, once his victim was either asleep, unconscious, or substantially incapacitated from the effects of the IV, he exposed his victim's penis and performed fellatio.[2]  The first time occurred at a party the appellant

---

[2] Two of the Article 120 offenses involved the same victim, HM2 2.  The remaining Article 120 offense involved HM2 1.

hosted for several junior corpsmen while his wife and children were out of town. Several of these Sailors were visibly drunk and the appellant suggested that they all "practice giving IVs to each other." When several hesitated, the appellant persuaded them by saying it would "help to prevent a hangover the next morning[]." Prosecution Exhibit 1 at 3. After starting the IVs, the appellant proceeded to inject Phenergan into the IV bag of one of the junior corpsmen to whom he was sexually attracted, HM2 2.

During the providence inquiry, the appellant admitted that he gave Phenergan to HM2 2 knowing that when combined with alcohol it would "knock him out" and provide the appellant with an opportunity to perform fellatio upon HM2 2 while he was either asleep or unconscious. Record at 91-98. The appellant used a similar tactic at the medical clinic. On two additional occasions, he gave his victim intravenous injections containing Phenergan during sick call and then performed fellatio upon his victim while his victim was either asleep or otherwise under the effects of the drug. *Id.* at 102-09, 112-34.

When explaining the elements of the Article 120 offenses to the appellant, the military judge repeatedly explained the defense of mistake of fact as to consent. *Id.* at 90-91, 100-01, 111-12. Each time the appellant acknowledged that he understood the defense and explained in detail why he believed it did not apply. *Id.* at 97-98, 103-06, 108, 112-14, 117, 124, 126-28.

Following trial, TDC submitted a lengthy clemency letter including several letters from the appellant's immediate family. Clemency Request of 11 Feb 2013. TDC asked that the CA reduce the appellant's sentence of confinement by 24 months and offer the appellant sex offender rehabilitation treatment either at the U.S. Disciplinary Barracks (USDB) at Fort Leavenworth, KS or at an alternate location. *Id.* at 2. In his letter, TDC explained that the appellant was being treated at USDB for depression and, although amenable to sex offender treatment there, was unlikely to receive it due to a long wait for such treatment at the USDB. *Id.* at 2-4. Although TDC included personal letters from the appellant's wife, mother, father, and stepmother with his submission, he did not include a letter from the appellant.

## Discussion

In support of his ineffective assistance claim, the appellant offers two unsworn declarations. Appellant's

3

Nonconsent Motion to Attach of 10 Oct 2013. In the first, he alleges that he told TDC that he believed his two victims consented to his sexual conduct.[3] Since TDC told him that they would only lose at trial, he alleges that he believed he had no other option but to enter a pretrial agreement and plead guilty.[4] In his second declaration, the appellant asserts that TDC did not assist him in submitting a personal request as part of a post-trial clemency package.

We review claims of ineffective assistance of counsel under the test outlined by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984). We review such claims *de novo*. *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007) (citation omitted). To prevail, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687) (additional citation omitted).

In the guilty plea context, the first part of the *Strickland* test remains the same -- whether counsel's performance fell below a standard of objective reasonableness expected of all attorneys. *United States v. Bradley,* 71 M.J. 13, 16 (C.A.A.F 2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 56—58 (1985)). The second prong, however, is modified to focus on whether the "ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. "(T)o satisfy the 'prejudice requirement,' the defendant must show that there is a

---

[3] Although the appellant refers to the maltreatment and sexual harassment offenses in passing, he offers no facts in his declaration to undermine his sworn admissions at trial that his workplace conduct created a hostile working environment, and were cruel or oppressive. He focuses his post-trial declaration on the three Article 120 offenses and his putative belief that the victims consented to his sexual conduct.

[4] The appellant alludes to statements he allegedly made to a RULE FOR COURTS-MARTIAL 706, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) board that presumably would corroborate his post-trial assertions. At trial, the parties represented to the military judge that an R.C.M. 706 board had been conducted; however, no copy of the report was appended to the record. Record at 17. Later during trial the military judge discussed with both TDC and the appellant whether any issues pertaining to mental responsibility were raised by the board and whether the viability of any related defense had likewise been discussed between the appellant and his counsel. *Id*. at 255-57. Both TDC and the appellant denied any such defense existed. *Id*. at 256-57. The appellant apparently is in possession of the full R.C.M. 706 report, but did not include any portion that corroborates his post-trial assertions. *See* Appellant's Nonconsent Motion for Fifth Enlargement of Time of 14 Aug 2013 at 2.

4

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

An ineffective assistance claim requires both a serious deficiency and actual prejudice, and the appellant carries the burden to prove both. *Tippit*, 65 M.J. at 76. It is a burden of production as well as persuasion, especially when factual allegations are central to the claim of ineffectiveness. *United States v. Moulton*, 47 M.J. 227, 229-30 (C.A.A.F. 1997). If a factual dispute exists over a matter pertinent to the appellant's claim, then we must decide whether further fact-finding is warranted under *United States v. Ginn,* 47 M.J. 236 (C.A.A.F. 1997). If, however, the record as a whole and the appellate filings "compellingly demonstrate[s]" the improbability of the appellant's factual allegations, we may ignore his post-trial assertions and decide the underlying claim. *Ginn*, 47 M.J. at 248.

1. <u>Mistake-of-Fact Defense and Decision to Plead Guilty</u>

According to his post-trial declaration, the appellant believed that both victims consented to his conduct and he explained as much to TDC. Yet he offers no amplifying facts in his post-trial declaration, and the record of trial flatly contradicts his claim. At numerous times throughout the appellant's providence inquiry he repeatedly acknowledged that his victims were asleep, unconscious, or unable to consent to his conduct. The military judge repeatedly probed on this subject asking him if any previous contact or pre-existing relationship indicated to the appellant that the victim may have consented. Each time the appellant, without hesitation or uncertainty, denied any such belief. Furthermore, he stipulated that on two of the three occasions he knew that his victim was unconscious, asleep or otherwise unable to consent to the sexual contact. PE 1 at 4-6. On the third occasion, he stipulated that after initiating an IV containing Phenergan, he "dimmed the lights so that it was dark" in the examination room and then left. *Id*. at 4. After several minutes, he returned and proceeded to unzip his victim's pants, remove his penis and perform fellatio, all without any response from his victim. *Id*. Finally, he stipulated that his conduct with respect to this occasion was without lawful justification or his victim's permission. *Id*. at 4-5.

In short, nothing in the record supports the appellant's post-trial claim of a mistake of fact as to consent defense.

5

Additional evidence offered by the Government in aggravation reinforced the appellant's admissions during the plea inquiry that his conduct was nonconsensual.[5] We conclude that the record, as a whole, compellingly demonstrates the improbability of the appellant's post-trial assertions as to what transpired before his decision to enter into a pretrial agreement and plead guilty.

## 2. Absence of Personal Letter in Post-Trial Clemency Submission

In his second declaration, the appellant alleges that TDC failed to contact him and obtain a personal letter in support of his clemency petition. Even assuming his allegation were true, we conclude that the appellant fails to demonstrate prejudice as a result, i.e. "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Wiley*, 47 M.J. 158, 159 (C.A.A.F. 1997) (quoting *Strickland*, 466 U.S. at 694).

The result of the appellant's post-trial process could only have been different if the appellant had additional favorable clemency matters to submit, and he must prove the existence of such matters to demonstrate prejudice. *United States v. Starling*, 58 M.J. 620, 623 (N.M.Ct.Crim.App. 2003). However, the appellant offers no such details. *See United States v. Pierce*, 40 M.J. 149, 151 (C.M.A. 1994) (holding that "[v]ague or general intimations" are insufficient to demonstrate prejudice when claiming post-trial ineffective assistance).[6]

**Conclusion**

Accordingly, we affirm the findings and the sentence as approved by the CA.

---

[5] Record at 156-58, 161-64, 175-77, 184-87; PE 3 at 2; PE 4 at 2-4.

[6] In this regard, we found it unnecessary to order production of an affidavit from TDC. Such an affidavit is unnecessary unless we "review[] the allegation of ineffectiveness and the government response, examine[] the record, and determine[] that the allegation and the record contain evidence which, if unrebutted, would overcome the presumption of competence." *United States v. Lewis*, 42 M.J. 1, 6 (C.A.A.F. 1995) (citation omitted). By assuming a deficiency, we have taken as unrebutted the appellant's assertions about his counsel's performance, but neither those assertions nor the record provide a factual predicate for a finding of prejudice. *See United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000).

For the Court


R.H. TROIDL
Clerk of Court